## KING *v.* ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA.

No. 171.   Argued December 10–11, 1947.—Decided March 8, 1948.

*Jesse W. Boyd* and *Harvey W. Johnson* argued the cause and filed a brief for petitioner.

*E. W. Dillon* and *C. F. Haynsworth, Jr.* argued the cause for respondent.   With them on the brief was *F. Dean Rainey.*

Mr. Chief Justice Vinson delivered the opinion of the Court.

This is a suit to obtain payment of the proceeds of a $5,000 insurance policy.   Federal jurisdiction is founded on diversity of citizenship, and, for present purposes,

South Carolina law is controlling.[1]  We granted certiorari[2] in order to determine whether the Circuit Court of Appeals' refusal to follow the only South Carolina decision directly in point, the decision of a Court of Common Pleas, was consistent with the Rules of Decision Act[3] as applied in *Erie R. Co.* v. *Tompkins,* 304 U. S. 64 (1938), and subsequent cases.

The petitioner, Mrs. King, is the beneficiary of the policy; her husband, Lieutenant King, was the insured; and the respondent Order of United Commercial Travelers of America is the insurer.  The policy insured against King's accidental death, but contained a clause exempting the respondent from liability for "death resulting from participation . . . in aviation."  It is this aviation exclusion clause which gave rise to the litigation now before us.

King lost his life one day in the winter of 1943 when a land-based Civil Air Patrol plane in which he was flight observer made an emergency landing thirty miles off the coast of North Carolina.  The plane sank, but King was not seriously hurt and managed to get out of the plane and don his life jacket.  He was still alive two and a half hours later, when an accompanying plane was forced to leave the scene.  When picked up about four and a half hours after the landing, however, he was dead.  The medical diagnosis was "Drowning as a result of exposure in the water."

The respondent took the position that death, while "accidental," resulted from "participation . . . in avia-

---

[1] Both courts below so held, and until the case was briefed for this Court, neither party took issue with this holding or raised any full faith and credit question.  Hence it is unnecessary for us to consider whether or not *United Commercial Travelers of America* v. *Wolfe,* 331 U. S. 586 (1947), is applicable.

[2] 332 U. S. 754.

[3] Judiciary Act of 1789, § 34, R. S. § 721, 28 U. S. C. § 725.

tion." Accordingly, it refused to pay Mrs. King the proceeds of the policy. A resident of South Carolina, she then sued the respondent in a court of that State, contending that drowning rather than the airplane flight was the cause of death within the meaning of the policy. The respondent, an Ohio corporation, exercised its statutory right to remove the cause to the Federal District Court for the Western District of South Carolina.[4]

The parties agreed that South Carolina law was controlling, but up to the time of the District Court's decision neither of them had located any decision on aviation exclusion clauses by any South Carolina court. The District Court therefore fell back on what it deemed to be general principles of South Carolina insurance law, as enunciated by the State Supreme Court: that ambiguities in an insurance contract are to be resolved in favor of the beneficiary, and that the cause of death, within the meaning of accident insurance policies, is the immediate, not the remote cause.[5] Applying these principles, the court held that King's death resulted from drowning, not from participation in aviation, and that Mrs. King was entitled to recover.[6]

---

[4] 28 U. S. C. § 71.

[5] For this proposition the court cited *Goethe* v. *New York Life Ins. Co.*, 183 S. C. 199, 190 S. E. 451 (1937). In that case the insured died following vigorous efforts to put out a fire. There was disputed medical evidence as to whether the symptoms shown just before death indicated heatstroke or heart disease as the cause of death. There was no evidence that the insured suffered from heart disease before that time. The Supreme Court of South Carolina upheld a jury determination that heatstroke caused death, and then, on the most disputed point in the case, ruled that heatstroke was a "bodily injury" within the meaning of an accident insurance policy. It seems to us, as it apparently did to the Circuit Court of Appeals, questionable whether this case supports the principle for which it was cited.

[6] 65 F. Supp. 740 (1946).

Two months later, a South Carolina court, the Court of Common Pleas for Spartanburg County, likewise ruled in favor of Mrs. King in a suit against a different insurer on a $2,500 policy which contained an almost identical aviation exclusion clause. The judge followed the same reasoning as the District Court had and relied, at least in part, on that court's decision. Under South Carolina statutes the insurer in this second case had the right to appeal to the State Supreme Court,[7] but did not do so.

On appeal of the present case, the Circuit Court of Appeals reversed the District Court's judgment for Mrs. King.[8] The court acknowledged that under South Carolina law ambiguities in insurance policies are to be construed against the insurer, but it found no ambiguity in the aviation exclusion clause insofar as its application to the facts of this case was concerned. On the contrary, King's death was thought clearly to have resulted from "participation . . . in aviation." Nothing in South Carolina Supreme Court decisions, it was said, was inconsistent with this view, whereas that court's accepted theories of proximate cause in tort cases supported it.[9] Under these circumstances, the Circuit Court of Appeals expressed its disbelief that the Supreme Court of South Carolina would have ruled for Mrs. King, had her case been before it, "in the face of reason and the very considerable authority" from other jurisdictions.[10] The Common Pleas decision in Mrs. King's favor, it was thought, was not binding on the Circuit Court of Appeals

[7] 1 S. C. Code Ann. §§ 26 and 780.

[8] 161 F. 2d 108 (1947).

[9] The court cited *Horne* v. *Atlantic Coast Line R. Co.*, 177 S. C. 461, 181 S. E. 642 (1935).

[10] Among the cases cited were *Neel* v. *Mutual Life Ins. Co. of New York*, 131 F. 2d 159 (C. C. A. 2, 1942), and *Green* v. *Mutual Benefit Life Ins. Co.*, 144 F. 2d 55 (C. C. A. 1, 1944).

as a final expression of South Carolina law since it was not binding on other South Carolina courts and since the court rendering it had relied on the District Court's ruling in the present case.

After we granted certiorari, a new factor was interjected in the case. Another South Carolina Court of Common Pleas, the one for Greenville County, handed down an opinion which, so far as relevant here, expressly rejected the reasoning of the Spartanburg Court of Common Pleas and espoused that of the Circuit Court of Appeals.

What effect, if any, we should give to this second Common Pleas decision becomes an appropriate subject for inquiry only if it is first determined that the Circuit Court of Appeals erred in not following the Spartanburg decision, which was the only one outstanding at the time of its action.[11] We therefore address ourselves first to that question.

The Rules of Decision Act [12] commands federal courts to regard as "rules of decision" the substantive "laws" of the appropriate state, except only where the Constitution, treaties, or statutes of the United States provide otherwise. And the *Erie R. Co.* case decided that "laws," in this context, include not only state statutes, but also the unwritten law of a state as pronounced by its courts.

The ideal aimed at by the Act is, of course, uniformity of decision within each state. So long as it does not impinge on federal interests, a state may shape its own law in any direction it sees fit, and it is inadmissible that cases dependent on that law should be decided differently

---

[11] Although the decision by the Spartanburg Court of Common Pleas was rendered after the District Court decision, it was proper for the Circuit Court of Appeals to consider it. See *Vandenbark* v. *Owens-Illinois Co.,* 311 U. S. 538 (1941).

[12] See note 3, *supra.*

according to whether they are before federal or state courts. This is particularly true where accidental factors such as diversity of citizenship and the amount in controversy enable one of the parties to choose whether the case is tried in a federal or a state court.

Effectuation of that policy is comparatively easy when the issue confronting a federal court has previously been decided by the highest court in the appropriate state; the *Erie R. Co.* case decided that decisions and opinions of that court are binding on federal courts. The *Erie R. Co.* case left open, however, the more difficult question of the effect to be given to decisions by lower state courts on points never passed on by the highest state court.

Two years later, a series of four cases presented some aspects of that question. In three of the cases this Court held that federal courts are bound by decisions of a state's intermediate appellate courts unless there is persuasive evidence that the highest state court would rule otherwise. *Six Companies* v. *Highway District,* 311 U. S. 180 (1940); *West* v. *American T. & T. Co.,* 311 U. S. 223 (1940); and *Stoner* v. *New York Life Ins. Co.,* 311 U. S. 464 (1940).[13] In the fourth case, *Fidelity Union Trust Co.* v. *Field,* 311 U. S. 169 (1940), the Court went further and held that a federal court had to follow two decisions announced four years earlier by the New Jersey Court of Chancery, a court of original jurisdiction.

---

[13] In all three cases the state supreme court had refused to review the intermediate appellate court decision; in the *West* and *Stoner* cases, the intermediate appellate court's decision had involved the same parties engaged in the subsequent case before the federal courts; and in the *Six Companies* case, the intermediate appellate court's decision had remained on the books for over twenty years without disapproval. These factors were mentioned in our opinions, but were not necessarily determinative. See *Fidelity Union Trust Co.* v. *Field,* 311 U. S. 169, 178 (1940).

The *Fidelity Union Trust Co.* case did not, however, lay down any general rule as to the respect to be accorded state trial court decisions. This Court took pains to point out that the status of the New Jersey Court of Chancery was not that of the usual *nisi prius* court. It had state-wide jurisdiction. Its standing on the equity side was comparable to that of New Jersey's intermediate appellate courts on the law side. A uniform ruling by the Court of Chancery over a course of years was seldom set aside by the state's highest court. And chancery decrees were ordinarily treated as binding in later cases in chancery.

The present case involves no attack on the policy of the Rules of Decision Act, the principle of the *Erie R. Co.* case, or the soundness of the other cases referred to above. It involves the practical administration of the Act; and the question it raises is whether, in the long run, it would promote uniformity in the application of South Carolina law if federal courts confronted with questions under that law were obliged to follow the ruling of a Court of Common Pleas.

The Courts of Common Pleas make up South Carolina's basic system of trial courts for civil actions.[14] There are fourteen judges for these courts, one for each of the judicial circuits into which the state's forty-six counties are

---

[14] S. C. Const., Art. 5, § 15. These courts also have limited appellate jurisdiction, varying somewhat from county to county. The Court of Common Pleas for Spartanburg County handles appeals from the county's probate court, 1 S. C. Code Ann. § 228, its court of domestic relations, 1 *id.* §§ 256–24 and 256–44, and its magistrates courts. The latter have civil jurisdiction concurrent with the courts of Common Pleas only in suits involving less than $100, 1 *id.* § 257.

The county court for Spartanburg County has concurrent jurisdiction in civil suits involving less than $3,000, but appeal from its decisions is directly to the Supreme Court of South Carolina, 1 *id.* §§ 184 and 190.

grouped.[15]  A circuit judge hears civil cases at specified times in each county comprising the circuit to which he is then assigned, and at such times his court is called the Court of Common Pleas for that particular county.[16] In addition, he presides over a parallel set of criminal courts, the Courts of General Sessions.  South Carolina has no tier of intermediate appellate courts, and appeal from Common Pleas decisions is directly, and as a matter of right, to the State Supreme Court.[17]

While the Courts of Common Pleas are denominated courts of record, their decisions are not published or digested in any form whatsoever.  They are filed only in the counties in which the cases are tried, and even there the sole index is by the parties' names.[18]  Perhaps because these facts preclude ready availability to bench and bar, the Common Pleas decisions seem to be accorded little weight as precedents in South Carolina's own courts. In this connection, respondent has submitted a certificate from the Chief Justice of the Supreme Court of South Carolina to the effect that "under the practice in this State an unappealed decision of the Court of Common Pleas is binding only upon the parties who are before the Court in that particular case and would not constitute a precedent in any other case in that Court or in any other court in the State of South Carolina."

Consideration of these facts leads us to the conclusion that the Circuit Court of Appeals did not commit error. While that court properly attributed some weight to the

---

[15] S. C. Const., Art. 5, § 13; 1 S. C. Code Ann. § 50.  There is provision for periodic interchange of judges among the circuits. 1 S. C. Code Ann. § 22.

[16] S. C. Const., Art. 5, § 16; 1 S. C. Code Ann. §§ 51–64.

[17] See note 7 *supra.*

[18] S. C. Circuit Court Rule 39.  There is a Clerk of the Court of Common Pleas for each county.  S. C. Const., Art. 5, § 27.

Spartanburg Common Pleas decision, we believe that it was justified in holding the decision not controlling and in proceeding to make its own determination of what the Supreme Court of South Carolina would probably rule in a similar case.

In the first place, a Court of Common Pleas does not appear to have such importance and competence within South Carolina's own judicial system that its decisions should be taken as authoritative expositions of that State's "law." In future cases between different parties, as indicated above, a Common Pleas decision does not exact conformity from either the same court or lesser courts [19] within its territorial jurisdiction; and it may apparently be ignored by other Courts of Common Pleas without the compunctions which courts often experience in reaching results divergent from those reached by another court of coordinate jurisdiction. Thus a Common Pleas decision does not, so far as we have been informed, of itself evidence one of the "rules of decision commonly accepted and acted upon by the bar and inferior courts." [20] Furthermore, as we have but recently had occasion to remark, a federal court adjudicating a matter of state law in a diversity suit is, "in effect, only another court of the State"; [21] it would be incongruous indeed to hold the federal court bound by a decision which would not be binding on any state court.

Secondly, the difficulty of locating Common Pleas decisions is a matter of great practical significance. Litigants could find all the decisions on any given subject only by laboriously searching the judgment rolls in all of South Carolina's forty-six counties. To hold that federal

---

[19] *I. e.,* county courts, magistrates courts, probate courts, and courts of domestic relations. See note 14 *supra.*

[20] *West* v. *American T. & T. Co.,* 311 U. S. 223, 236 (1940).

[21] *Guaranty Trust Co.* v. *York,* 326 U. S. 99, 108 (1945).

courts must abide by Common Pleas decisions might well put a premium on the financial ability required for exhaustive screening of the judgment rolls or for the maintenance of private records. In cases where the parties could not afford such practices, the result would often be to make their rights dependent on chance; for every decision cited by counsel there might be a dozen adverse decisions outstanding but undiscovered.[22]

In affirming the decision below, we are deciding only that the Circuit Court of Appeals did not have to follow the decision of the Court of Common Pleas for Spartanburg County. We do not purport to determine the correctness of its ruling on the merits. Nor is our decision to be taken as promulgating a general rule that federal courts need never abide by determinations of state law by state trial courts. As indicated by the *Fidelity Union Trust Co.* case, other situations in other states may well call for a different result.

It may also be well to add that, even if the Circuit Court of Appeals had been in error at the time of its decision, reversal of its judgment would not necessarily be appropriate in view of the second Common Pleas decision.[23] But we prefer to regard that second decision as an illustration of the perils of interpreting a Common Pleas decision as a definitive expression of "South Carolina law," not as a controlling factor in our decision.

*Affirmed.*

---

[22] In the present case, the Spartanburg decision came to light because petitioner had been a party to it, the Greenville decision because respondent's counsel had been a party to it.

[23] See *Vandenbark* v. *Owens-Illinois Co.*, 311 U. S. 538 (1941).