DOGGRELL v. GREAT SOUTHERN
BOX CO., INC., OF MISSISSIPPI.

No. 11701.

United States Court of Appeals
Sixth Circuit.

July 9, 1953.

672

Harry W. Wellford, Memphis, Tenn. (Lewis R. Donelson, III, Harry W. Wellford, on the brief; Snowden, Davis, McCloy, Donelson & Myar, Memphis, Tenn., of counsel), for appellant.

John B. Mack, Memphis, Tenn. (Clarence Clifton, John B. Mack, Memphis, Tenn., on the brief; Clifton & Mack, J. W. Kirkpatrick, Memphis, Tenn., Norton & Norton, Forrest City, Ark., of counsel), for appellee.

Before MARTIN, McALLISTER and MILLER, Circuit Judges.

MARTIN, Circuit Judge.

Judgment for $3,332.47, with interest, was entered against appellant Frank E. Doggrell, Jr., and W. G. Konz, in an action brought by the appellee in the United States District Court for Western Tennessee. Appellant was one of the three original incorporators and also an original stockholder in Forrest City Wood Products, Inc., an organization attempted to be created in the spring of 1948 as a corporation under the laws of Arkansas. Concededly, at the time the debt was incurred upon which the instant action is grounded, the corporate organization had not been completed in compliance with the requirements of section 64–103, Arkansas Statutes, Annotated, 1947, which provides that the "corporate existence shall begin" upon filing the Articles of Incorporation with the Secretary of State; provided, however, "a set of the Articles of Incorporation * * * shall be filed for record with the County Clerk of the County in which the corporation's principal office or place of business in this State is located."

The corporate charter was not filed for record with the County Clerk of St. Francis County, the principal place of business of the corporation, or in any other county in Arkansas, until March 19, 1951, nearly three years after the issuance of the charter by the Secretary of State of Arkansas. During this period, the debt in controversy was incurred while Forrest City Wood Products was conducting a furniture manufacturing business at Forrest City, Arkansas. The instant action of appellee against appellant and Konz was brought to recover the invoice price of merchandise which, pursuant to contract made in the fall of 1950, it had sold and shipped to Forrest City Wood Products, Inc. The latter organization was in bankruptcy at the time the suit was filed.

The district court held that appellant and Konz, as incorporators and stockholders of Forrest City Wood Products, Inc., were liable as partners jointly and severally for the debts, including the one involved in this case, incurred by that organization. Konz has not appealed from the judgment. In his oral opinion, the United States District Judge rested his decision upon the authority of three opinions of the Supreme Court of Arkansas: Whitaker v. Mitchell Mfg. Co., 1952, 219 Ark. 779, 244 S.W.2d 965; Gazette Publishing Co. v. Brady, 204 Ark. 396, 162 S.W.2d 494, and Garnett v. Richardson, 35 Ark. 144. He distinguished an Arkansas case cited by appellant, Wesco Supply Company v. Smith, 134 Ark. 23, 203 S.W. 6, on its facts.

We think that undoubtedly the district judge construed the Arkansas opinions correctly. The Whitaker case, supra, is directly in point. There, the State of Arkansas' Supreme Court passed upon the legality of the incorporation of Forrest City Wood Products, Inc., at the time the debt in issue herein was incurred. Whitaker was the third incorporator of Forrest City Wood Products, Inc., and was directly responsible for the failure to record the corporate charter in St. Francis County, Arkansas, before the debts were incurred. He was president and general manager of the purported corporation in which both appellant and Konz were inactive. They had not even been aware that Whitaker had not filed the certificate as required by law before engaging in business and creating the corporate debt for which they were sued as partners.

In its opinion in Whitaker v. Mitchell Mfg. Co., supra, the Arkansas Supreme Court said that appellant Whitaker sought to distinguish his case on its facts from Gazette Publishing Company v. Brady, supra; but that the only factual difference between the two cases was that, in the Whitaker case, the Articles of Incorporation were filed with the County Clerk on the day of the trial, while in the Gazette case they "were never so filed." The difference was held to be of no avail to Whitaker for the reason that if he were liable individually when the obligation was incurred he could not later, without consent of the creditor, do anything to escape such liability. The court also rejected the contention of Whitaker that the Gazette case should be overruled. It was pointed out that the insistence that corporate existence began when the Articles of Incorporation were filed with the Secretary of State had been considered but not accepted in the Gazette case, inasmuch as a line of decisions, beginning with Garnett v. Richardson, supra, had held that under the statutes of Arkansas the Articles of Incorporation must be filed with both the Secretary of State and the County Clerk. The court said [219 Ark. 779, 244 S.W.2d 966.]: "The Garnett case, supra, decided in 1879, is short and simply holds that where a purported corporation had not filed its Articles with both the Secretary of State and the County Clerk the individuals (attempting to form the corporation) were liable for a contracted debt."

In Harrill v. Davis, 168 F. 187, the Court of Appeals for the Eighth Circuit held incorporators individually liable as partners for a debt incurred prior to the filing of their Articles of Incorporation, where they failed to file such articles in both places required by the Arkansas statute.

Wesco Supply Company v. Smith, supra, cited by the appellant herein, was distinguished from the Garnett case in that, in the first-mentioned case, Smith had bought stock in the corporation *after* the attempted corporate organization and knew nothing of the failure to file the charter as required by law. Therefore, he was held not personally liable for merchandise sold to the purported corporation. In concluding its opinion in the Whitaker case, the highest court of Arkansas said: "Regardless of what our views might be were this a case of first impression, the issue presented here was squarely passed on in the Gazette case, supra, and we find no compelling reason for disturbing that decision."

After the United States District Judge had decided this case in favor of appellee and while the appeal of Doggrell was pending, a judge of the Chancery Court of Shelby County, Tennessee, sitting at Memphis, reached a contrary conclusion of law in a suit brought against appellant and Konz, based on an indebtedness of the Forrest City Wood Products, Inc. [Turner Brass Works v. Doggrell, Jr., and Konz]. A Tennessee creditor instituted the action. The Tennessee Chancellor took cognizance of the decision of the Supreme Court of Arkansas in Whitaker v. Mitchell Mfg. Co., supra; but, upon the stated authority of Woods v. Wicks, 75 Tenn. 40, refused to follow the Arkansas law as pronounced by the highest court of that state for the asserted reason that the liability sought to be enforced was penal in character and therefore would not be enforced in the Tennessee forum. The Chancellor held, too, that the bill should be dismissed for the further reason that, under the uniform

partnership laws of both Tennessee and Arkansas—the liability of the partners being for partnership debts and obligations of the sort involved, *joint only* and not *joint and several*—Whitaker, though a necessary party, had not been joined as a defendant. Appellant urges that, upon the authority of Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, the federal court must follow the law of the forum in which the federal court sits and that, therefore, the decision of the state court chancellor is binding, not only on the United States District Court, but also upon this court as well.

■ We are not in accord with the statement that the decision of the Tennessee trial judge in the Turner Brass Works case, is binding on the federal court. The Chancery Court of Shelby County, though a court of record, does not publish its opinions. Many years ago, the Supreme Court of Tennessee stated, with respect to one of its own decisions: "The opinion was not ordered published in our reports. It remained, therefore, under the rule of this court, only the opinion of the judge who filed it, and valuable merely for its reasoning, although the judgment rendered in the case was the judgment of the whole court. The court does not encourage the citing of the unpublished opinions of its members, and never refers to them unless compelled to do so by a reference of counsel thereto." Phoenix Cotton Oil Co. v. Royal Indemnity Co., 140 Tenn. 438, 442, 443, 205 S.W. 128, 130. Cf. Board of Commissioners of Union City v. Obion County, 1949, 188 Tenn. 666, 669, 222 S.W.2d 7.

In 1948, the Supreme Court of the United States decided that, under the Rules of Decision Act, 28 U.S.C.A., § 725 [now § 1652] as applied in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, in a diversity of citizenship case where decision turned on a question of state law on which there had been no decision by the highest court, a federal court need not follow the decision of a county court of common pleas whose decisions are not reported and, under the state practice, are binding only on the parties to the particular case and do not constitute precedents in any other cases in that court or in any other court of the state. King v. Order of United Commercial Travelers of America, 333 U.S. 153, 158–162, 68 S.Ct. 488, 92 L.Ed. 608. In writing the unanimous opinion of the Supreme Court in that case, Chief Justice Vinson pointed out that the Erie Railroad decision had left open the difficult question of the effect to be given decisions of lower state courts on points which had not been passed upon by the highest court of the state whose laws were applicable. He directed attention to the fact that some aspects of the case had been presented in a series of four cases, in three of which it had been held that federal courts are bound by the decisions of a state's intermediate appellate courts unless there be persuasive evidence that the highest state court would rule otherwise, Six Companies v. Highway District, 311 U.S. 180, 61 S.Ct. 186, 85 L.Ed. 114; West v. American T. & T. Co., 311 U.S. 223, 61 S. Ct. 179, 85 L.Ed. 139; Stoner v. New York Life Ins. Co., 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284.

His opinion discussed in detail the fourth case, Fidelity Union Trust Co. v. Field, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109, wherein it had been held that a federal court was required to follow two decisions announced four years earlier by the New Jersey Court of Chancery, a court of original jurisdiction. The Chief Justice said that the Fidelity Union Trust Company case had not laid down any general rule as to the respect to be accorded state trial court decisions and that pains had been taken to point out that the status of the New Jersey Court of Chancery was not that of the usual *nisi prius* court; that it had statewide jurisdiction; that its standing on the equity side was comparable to that of New Jersey's intermediate appellate courts on the law side; that a uniform ruling by the New Jersey Court of Chancery over a course of years had been seldom set aside by the highest court of that state; and that chancery decrees had been treated ordinarily as binding in later cases in chancery.

The opinion of the Chief Justice related that the courts of common pleas of South

Carolina constitute the basic system for the trial of civil actions in that state; that there are fourteen judges of those courts, one for each of the judicial circuits of the state; that South Carolina has no tier of intermediate appellate courts, appeals from decisions of the common pleas courts being carried directly to the South Carolina Supreme Court.

In view of the applicability and great practical importance of the doctrine of the King case, supra, we think it well to quote at length from the opinion of the Chief Justice, as follows: "While the Courts of Common Pleas are denominated courts of record, their decisions are not published or digested in any form whatsoever. They are filed only in the counties in which the cases are tried, and even there the sole index is by the parties' names. Perhaps because these facts preclude ready availability to bench and bar, the Common Pleas decisions seem to be accorded little weight as precedents in South Carolina's own courts. In this connection, respondent has submitted a certificate from the Chief Justice of the Supreme Court of South Carolina to the effect that 'under the practice in this State an unappealed decision of the Court of Common Pleas is binding solely upon the parties who are before the Court in that particular case and would not constitute a precedent in any other case in that Court or in any other court in the State of South Carolina.'

"Consideration of these facts leads us to the conclusion that the Circuit Court of Appeals did not commit error. While that court properly attributed some weight to the Spartanburg Common Pleas decision, we believe that it was justified in holding the decision not controlling and in proceeding to make its own determination of what the Supreme Court of South Carolina would probably rule in a similar case.

"In the first place, a Court of Common Pleas does not appear to have such importance and competence within South Carolina's own judicial system that its decisions should be taken as authoritative expositions of that State's 'law.' In future cases between different parties, as indicated above, a Common Pleas decision does not exact conformity from either the same court or lesser courts within its territorial jurisdiction; and it may apparently be ignored by other Courts of Common Pleas without the compunctions which courts often experience in reaching results divergent from those reached by another court of coordinate jurisdiction. Thus a Common Pleas decision does not, so far as we have been informed, of itself evidence one of the 'rules of decision commonly accepted and acted upon by the bar and inferior courts.' Furthermore, as we have but recently had occasion to remark, a federal court adjudicating a matter of state law in a diversity suit is, 'in effect, only another court of the State' (Guaranty Trust Co. of New York v. York, 326 U.S. 99, 108, 65 S.Ct. 1464, 89 L.Ed. 2079); it would be incongruous indeed to hold the federal court bound by a decision which would not be binding on any state court.

"Secondly, the difficulty of locating Common Pleas decisions is a matter of great practical significance. Litigants could find all the decisions on any given subject only by laboriously searching the judgment rolls in all of South Carolina's forty-six counties. To hold that federal courts must abide by Common Pleas decisions might well put a premium on the financial ability required for exhaustive screening of the judgment rolls or for the maintenance of private records. In cases where the parties could not afford such practices, the result would often be to make their rights dependent on chance; for every decision cited by counsel there might be a dozen adverse decisions outstanding but undiscovered.

"In affirming the decision below, we are deciding only that the Circuit Court of Appeals did not have to follow the decision of the Court of Common Pleas for Spartanburg County. We do not purport to determine the correctness of its ruling on the merits. Nor is our decision to be taken as promulgating a general rule that federal courts need never abide by determinations of state law by state trial courts. As indicated by the Fidelity Union Trust Co. case, other situations in other states may well call for a different result." 333 U.S. at

page 160, 161, 162, 68 S.Ct. at page 492, 493.

As has been stated earlier, the chancery courts of Tennessee, though courts of record, do not publish their opinions. Their opinions are filed only in the counties in which the cases are tried. Most appeals from their decrees lie to an intermediate court, the Court of Appeals of Tennessee, from which the case may be carried by certiorari to the Supreme Court of Tennessee. In consequence of the greater number of counties in Tennessee, it would be even more difficult for attorneys or litigants to find the decisions of the chancery courts of Tennessee on any given subject than it would be to find the decisions of *nisi prius* courts in South Carolina. It seems clear, therefore, that no more binding effect should be accorded the decision of the chancellor (a trial judge in Tennessee), which was followed in a judgment entered without opinion by a trial judge of the Circuit Court of Shelby County, Tennessee [Paper Products Company v. Frank E. Doggrell, Jr., and W. G. Konz], than was given the decision of the court of common pleas of South Carolina in the King case, supra.

We think that Woods v. Wicks, 75 Tenn. 40, upon which the Tennessee Chancellor relied and which appellant urges here as authority for his position, is distinguishable from the case at bar, in that *there* the organization of the foreign corporation had been completed and the certificate of incorporation filed as required by law in the office of the appropriate Kentucky county court clerk, while in the present case the Articles of Incorporation of Forrest City Wood Products, Inc., had not been filed with the county clerk of the appropriate Arkansas county as required by law and the incorporation was therefore incomplete. The personal liability sought to be enforced in the Tennessee court upon the stockholders of the foreign corporation was rested upon a Kentucky statute which required the president and a majority of the directors to make, sign and record, in the same county court clerk's office where the charter of incorporation was filed, a certificate stating the amount of capital stock paid in.

The opinion of the Tennessee Court points out that the statutory liability under the law of Kentucky consisted of a penalty for violation of a provision of a corporate charter by the officers of the corporation and that, no legal duty resting upon them, the stockholders could not be held liable for the debts of the foreign corporation in consequence of the non-performance of a formal act required to be performed by its officers. The opinion of the Tennessee Supreme Court concluded: "No court of another sovereignty can be expected to enforce such a penalty."

In Sullivan v. Farnsworth, 132 Tenn. 691, 705, 179 S.W. 317, 320, it was held that unpaid subscriptions for the capital stock, where other assets are inadequate to pay the debts of a corporation, constitute a trust fund for the benefit of creditors and every stockholder may be compelled to pay for stock subscribed by him up to its par value, if an assessment of that much would be necessary to pay the corporate debts. The corporation involved had been created under the laws of Maine. The Tennessee Court held that, regardless of comity, it was its duty to enforce the obligation of the defendant stockholder, a Tennessee citizen, in the manner provided by the laws of Maine. The opinion asserted: "The liability of a stockholder in a foreign corporation for the debts of such corporation is to be determined by the laws of the state of incorporation. If the liability is in the nature of contract, and is not opposed to the legislation or public policy of the state in which it is sought to be enforced, the courts will enforce it. If the liability is penal in its nature, it will not be enforced outside of the state creating it. Woods v. Wicks, 75 Tenn. 40."

The state policy of Tennessee as evinced by the Supreme Court in several decisions has been to retain rigid control of the method by which a foreign corporation qualifies to do business within the state; and, if the corporation does not properly qualify under Tennessee law, the stockholders have been held liable as partners for the contractual debts of the corporation, even though they did not know of such non-compliance by the corporation

with the requirements of the statutes. Cunnyngham v. Shelby, 136 Tenn. 176, 188 S.W. 1147, L.R.A.1917B, 572; Equitable Trust Co. v. Central Trust Co., 145 Tenn. 148, 239 S.W. 171, and cases there cited. The state of incorporation may adopt such requirements as to corporate organization as it may deem appropriate; provided the requirements do not conflict with the Federal Constitution. Prudential Ins. Co. of America v. Cheek, 259 U.S. 530, 536, 42 S. Ct. 516, 66 L.Ed. 1044.

█ The opinion in Crouch v. Gray, 154 Tenn. 521, 530, 290 S.W. 391, 50 A.L.R. 1023, declared that the principle underlying the holding in Cunnyngham v. Shelby, supra, is grounded in the universal doctrine that, whenever there has been a failure to bring a corporation into full existence, those proceeding with the corporate business become individually liable for the corporate debts.

The argument of appellant, based on the reasoning of the Tennessee Chancellor in Turner Brass Works v. Doggrell, supra, that the liability asserted in this case, being penal in character, should not be enforced is in direct conflict with the holding of the Supreme Court in Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123. In that case, the highest court held that whether a statute of one state, which in some aspects might be called penal, is a penal law in the international sense that it cannot be enforced in the courts of another state depends upon whether the purpose of the pertinent statute is to punish an offense against the public justice of the state, or to afford a private remedy to a person injured by a wrongful act. Applying this principle, it was held that a statute rendering the officers of a corporation who sign and record a false certificate of the amount of its capital stock liable for all the corporate debts is not a penal law in the international sense. Moreover, the Supreme Court made it plain that, should the highest court of a state decline to give full faith and credit to the judgment of another state for the reason that in its opinion such judgment was for a penalty the Supreme Court, in determining whether "full faith and credit" have been given to that judg-

ment, must and would decide for itself whether or not the original cause of action was penal in the international sense. Mr. Justice Gray, in his comprehensive opinion, said, inter alia: "Penal laws, strictly and properly, are those imposing punishment for an offense committed against the state, and which, by the English and American constitutions, the executive of the state has the power to pardon. Statutes giving a private action against a wrongdoer are sometimes spoken of as penal in their nature, but in such cases it has been pointed out that neither the liability imposed nor the remedy given is strictly penal. * * * The test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public or a wrong to the individual, according to the familiar classification of Blackstone: 'Wrongs are divisible into two sorts or species: private wrongs and public wrongs. The former are an infringement or privation of the private or civil rights belonging to individuals, considered as individuals, and are thereupon frequently termed civil injuries; the latter are a breach and violation of public rights and duties, which affect the whole community, considered as a community, and are distinguished by the harsher appellation of crimes and misdemeanors. 3 Bl.Comm. 2. * * * By our law, a private action may be maintained in one state, if not contrary to its own policy, for such a wrong done in another, and actionable there, although a like wrong would not be actionable in the state where the suit is brought. * * * The judgment rendered by a court of the state of New York, now in question, is not impugned for any want of jurisdiction in that court. The statute under which that judgment was recovered was not, for the reasons already stated at length, a penal law, in the international sense. The faith and credit, force and effect, which that judgment had by law and usage in New York was to be conclusive evidence of a direct civil liability from the individual defendant to the individual plaintiff for a certain sum of money, and a debt of record, on which an action would lie, as on any other civil judgment inter partes. The court of appeals of Maryland,

therefore, in deciding this case against the plaintiff, upon the ground that the judgment was not one which it was bound in any manner to enforce, denied to the judgment the full faith, credit, and effect to which it was entitled under the constitution and laws of the United States." Huntington v. Attrill, 146 U.S. 657, 667, 668, 670, 686, 13 S.Ct. 224, 36 L.Ed. 1123. Compare Whitman v. Oxford National Bank, 176 U. S. 559, 567, 20 S.Ct. 477, 44 L.Ed. 587.

■ The opinion of the Supreme Court of Tennessee in Whitlow v. Nashville C. & St. L. Ry. Co., 114 Tenn. 344, 349, 84 S.W. 618, 68 L.R.A. 503, cites Huntington v. Attrill, supra, to the effect that the test whether a statute is penal is whether the wrong sought to be redressed is a wrong to the public or a wrong to an individual.

■ We think that, under the "full faith and credit" clause of the Federal Constitution, where the Arkansas statute upon which liability in the instant case is grounded is not penal in the sense that it cannot be enforced in the forum of another state, the courts of Tennessee, including a United States District Court sitting in that state, are bound to apply to the existing factual situation the pertinent Arkansas statute as construed by the Supreme Court of that state. See Broderick v. Rosner, 294 U.S. 629, 643, 55 S.Ct. 589, 79 L.Ed. 1100; Converse v. Hamilton, 224 U.S. 243, 260, 32 S.Ct. 415, 56 L.Ed. 749. Cf. Hughes v. Fetter, 1951, 341 U.S. 609, 613, 71 S.Ct. 980, 95 L.Ed. 1212.

We have considered the two Supreme Court decisions cited in appellant's brief under the caption "Federal Result Must Conform to States on Both Procedural and Remedial Issues": Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, and Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524; but we think that neither authority, when analyzed, supports the argument of appellant that the Arkansas statute in controversy should not be applied by a Tennessee court to impose liability upon appellant.

The final contention of appellant, and also the second ground of the decision by the Tennessee Chancellor in Turner Brass

Works v. Doggrell, supra, is that even if the liability should be conceded to be contractual in nature and therefore enforceable according to the laws of Arkansas, Whitaker is a necessary party to the litigation in the United States District Court in Tennessee. In support of this argument, it was said by the chancellor that, under the provisions of the Uniform Partnership Law, effective in both Tennessee and Arkansas, "the obligation sought to be created by the Arkansas corporation laws against the incorporators as partners must be held to be a joint liability only"; and that, therefore, Whitaker was a necessary and indispensable party.

Appellant cites Rule 19(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., to the point that persons having a joint interest in a litigation must be made partners and joined on the same side as plaintiffs or defendants. It is contended that, upon the authority of State of Washington v. United States, 9 Cir., 87 F.2d 421, it was indispensable to join Whitaker as a defendant in the instant case, for he was "the party who alone was most familiar with the subject matter of the controversy, and most responsible for the alleged liability." It is urged that, under the Uniform Partnership Act, operative in both Tennessee and Arkansas, Williams Tenn. Code, Ann., section 7854, and Arkansas Statutes, Ann. 1947, section 65–115, the liability of the partners for all debts and obligations of a corporation of the character here involved is *joint*, and *not joint and several*.

Southgate v. Linton, 181 Tenn. 540, 181 S.W.2d 888, is cited to the effect that obligations of a partnership growing out of a contract are joint liabilities and not joint and several, and that all partners must be joined in an action brought against the partnership. Appellant points out that whether partners are indispensable to an action is to be determined by state and not by federal rules. See Kroese v. General Steel Castings Corp., 3 Cir., 179 F.2d 760, 15 A.L.R.2d 1117. Upon the authority of Reconstruction Finance Corporation v. Teter, 7 Cir., 117 F.2d 716, it is insisted that the absence of indispensable parties is a ground for the dismissal of an action;

and Schuckman v. Rubenstein, 6 Cir., 164 F.2d 952, is pressed as authority for the proposition that the fact that a joinder of absent parties on the ground that they are indispensable may deprive the federal court of jurisdiction does not make such parties any less indispensable. Cf. Baltimore & Ohio R. R. v. City of Parkersburg, 268 U. S. 35, 45 S.Ct. 382, 69 L.Ed. 834.

■ All these arguments of appellant which on first blush might seem impressive are nullified by simple analysis of the statutes of Tennessee and Arkansas. Prior to the enactment of the Uniform Partnership Laws in both states, the liability of partners was joint and several. See Mahoney-Jones Co. v. Sams Bros., 128 Tenn. 207, 159 S.W. 1094; House v. Thompson, 40 Tenn. 512; Curlee Clothing Co. v. Hamm, 160 Ark. 483, 254 S.W. 818; and Coats v. Milner, 134 Ark. 311, 203 S.W. 701.

■ The contention of appellant that the obligation with which we are here concerned is governed by the Uniform Partnership Laws effective in both Arkansas and Tennessee is unsound, for the reason that, in Whitaker v. Mitchell Manufacturing Co., supra, decided more than ten years after the enactment of the Arkansas Uniform Partnership Law, the Supreme Court of Arkansas held the incorporators of the incompletely organized corporation to be individually liable as partners.

Certain existing statutes in both Tennessee and Arkansas make joint obligations joint and several. The Arkansas Statute, section 27–810, provides: "Joint obligations shall be construed to have the same effect as joint and several obligations, and may be sued on, and recoveries had thereon in like manner." In Tennessee, the same official Code of 1931, which contains the section of the Uniform Partnership Law defining the nature of a partner's liability, section 7854, also contains section 8613, which provides: "All joint obliga-

tions and promises are made joint and several, * * *."

■ So, even if the Uniform Partnership Law of each of the two states makes partners jointly liable for a debt of the character here concerned, the foregoing statute in each state makes that joint liability *joint and several.* Therefore, it was not necessary that Whitaker be made a party defendant to the instant action in order to hold Doggrell and Konz individually liable as partners for the debts of the defectively organized corporation, Forrest City Wood Products, Inc.

The judgment of the district court is affirmed.

McALLISTER, Circuit Judge (dissenting).

In this case, the articles of incorporation were filed with the Secretary of State of Arkansas. They were not filed with the County Clerk of the county in which the corporation's principal place of business was located. The Supreme Court of Arkansas construes the state corporation statute [1] as providing that the incorporators or stockholders of a corporation organized under Arkansas law are personally liable, as partners, for all obligations incurred before the articles are filed in both the office of the Secretary of State and the County Clerk of the proper county. That fact, however, does not, in my opinion, require that the courts of Tennessee, or a federal court in Tennessee, applying the law of the forum, hold stockholders or incorporators of an Arkansas corporation personally liable, as partners, for debts of the corporation because of the technical defect of nonfiling in the office of the County Clerk. This conclusion is based on two grounds: (1) that under Arkansas law, the corporation, by virtue of the filing of its articles with the Secretary of State, was a *de facto* corporation, and, under the laws of Tennessee, the members of a *de facto* corpora-

1. Section 64–103, Arkansas Statutes, Annotated, 1947, provides, in so far as here relevant, as follows: "Upon the filing with the Secretary of State of articles of incorporation, the corporate existence shall begin. Provided, however, a set of

the Articles of Incorporation * * * shall be filed for record with the County Clerk of the County in which the Corporation's principal office or place of business in this State is located."

tion cannot be held liable, as partners, by third persons who deal with them in their supposed corporate capacity, merely on account of a technical defect in the formation of the corporation; (2) the corporation statute, as construed by the courts of Arkansas, is a penal statute, which the courts of another state do not enforce.

The general rule as to the liability of members of a *de facto* corporation is set forth in 13 American Jurisprudence, page 201, as follows: "The members of a de facto corporation cannot be held liable as partners, according to the prevailing rule, by third persons who deal with them in their supposed corporate capacity merely on account of a technical defect in the formation of the corporation." Under Tennessee law, stockholders are not individually liable for the debts of a *de facto* corporation. Merriman v. Magiveny, 59 Tenn. 494. See also Crouch v. Gray, 154 Tenn. 521, 290 S.W. 391, 50 A.L.R. 1023.

In Arkansas, it is held in Bank of Midland v. Harris, 114 Ark. 344, 170 S.W. 67, that statutory requirements for the organization of corporations are generally regarded as conditions precedent to its formation, but if some requirement to a valid organization is omitted, such as failure to file its articles of incorporation with the proper officer, and the other requirements are met, there will result a corporation *de facto*, that is, an association whose right to corporate functions and attributes is complete as against all the world except the sovereign.

Where a company, having filed articles with the County Clerk, does not complete incorporation by filing articles with the Secretary of State, but does business as a corporation, it is a *de facto* corporation. Wesco Supply Co. v. Smith, 134 Ark. 23, 203 S.W. 6. In the foregoing case, it was held that one who was not an original incorporator but had only entered into a contract for the purchase of stock, was not liable as a partner under the Arkansas statute.

The corporation involved in this case had, as a corporation *de facto,* a corporate capacity, and possessed all the powers of a *de jure* corporation except that it was subject to direct attack by the State of Arkansas.

An association that, by the law of the state in which it purports to be incorporated, is a *de facto* corporation, will be dealt with in another state as a domestic *de facto* corporation is dealt with by the law of the latter state. First Title & Securities Co. v. United States Gypsum Co., 211 Iowa 1019, 233 N.W. 137, 73 A.L.R. 1196.

In Woods v. Wicks, 75 Tenn. 40, 41, the Supreme Court of Tennessee cited, as a sound conclusion, the holding of the Court of Appeals of New York in Chase v. Lord, 77 N.Y. 1, to the effect that, "after a corporate capacity has been acquired, a personal liability of the stockholder is inconsistent therewith, and cannot be imposed for a failure to perform some act except by a clear legislative direction."

All of the foregoing would seem clearly to sustain appellant's contention that, under the law of Tennessee, he is not liable as a partner for the debts of a *de facto* Arkansas corporation of which he was an incorporator and stockholder; and no question of his liability would ever, perhaps, have arisen except for a peculiar quirk in Arkansas law, for in that state, members of a *de facto* corporation are held, contrary to all other authorities, individually liable as partners for all the debts of the corporation, where there has been a failure to file the articles with the County Clerk, as well as with the Secretary of State.

This rule stems from one of the early Arkansas cases construing its incorporation statute. Garnett v. Richardson, 1879, 35 Ark. 144. The statute itself contains no provisions as to such individual liability.[2] That results only from the construction of the statute by the court. In Bank of Midland v. Harris, 1914, 114 Ark. 344, 170 S. W. 67, Chief Justice McCulloch, speaking for the court, observed that the Garnett case was contrary to the weight of modern authority, and later, in Wesco Supply Co. v. Smith, 1918, 134 Ark. 23, 203 S.W. 6, the same judge, in a dissenting opinion,

---

2. See footnote 1, ante.

stated that he thought it would be better to overrule Garnett v. Richardson in express words rather than to attempt to distinguish it from the case then before the court. Later, however, in Whitaker v. Mitchell Mfg. Co., 1952, 219 Ark. 779, 244 S.W.2d 965, 967, the Supreme Court of Arkansas continued to follow the Garnett case, as it said, "Regardless of what our views might be were this question of first impression," and "if we were free to do so we might agree with the dissenting opinion of Chief Justice McCulloch in which he stated it would be better to overrule the decision in the Garnett case rather than try to distinguish it." Such conclusions, which the court feels obliged to announce, under the law of Arkansas, lead to the utmost hardship and injustice to innocent parties, as, of course, the court realizes, but it feels bound to follow its earliest adjudication on the subject.

It is to be said that there seems a certain inconsistency in the Arkansas decisions, since, in Wesco Supply Co. v. Smith, 134 Ark. 23, 203 S.W. 6, 8, the court in its opinion quoted with approval from Cook on Corporations, Vol. 1, Section 234, as follows: "The great weight of authority has clearly established the rule that where a supposed corporation is doing business as a de facto corporation, the stockholders cannot be held liable as partners, although there [may] have been irregularities, omissions, or mistakes in incorporating or organizing the company."

It appears, however, that the Supreme Court of Arkansas holds that there is individual liability on the part of incorporators or stockholders of a de facto corporation. Tennessee holds that there is no individual liability on the part of incorporators or stockholders of a de facto corporation. Here, the rule should be applied that an association that, by the law of the state in which it purports to be incorporated, is a de facto corporation, will be treated in another state as a domestic de facto corporation is treated by the law of the latter state. Since there is no personal liability on the part of incorporators or stockholders of a de facto corporation in Tennessee, the forum of this case, it should be held that there is no personal liability on the part of the appellant for the debts of the de facto Arkansas corporation.

There is a further reason why appellant should not be held personally liable for the debts of the corporation. The incorporation statute of Arkansas, as construed by the Supreme Court of that state, holding incorporators and stockholders personally liable for the debts of a de facto corporation, is, in my opinion, a penal statute; and where liability is penal in its nature, it will not be enforced outside of the state creating it. Woods v. Wicks, 75 Tenn. 40. As stated in the accompanying opinion, whether a statute of one state, which, in some aspects, might be called penal, is a penal law in the international sense that it cannot be enforced in the courts of another state, depends upon whether the purpose of the pertinent statute is to punish an offense against the public justice of the state, or to afford a private remedy to a person injured by a wrongful act; and the test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual. Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 231, 36 L.Ed. 1123. In the foregoing case, it was held that a statute of a foreign state which made the officers of a corporation, who sign and record a false certificate of the amount of its capital stock, liable for all the debts, was not penal. The court emphasized that the statute took pains to secure and maintain a proper corporate fund for the payment of the corporate debts, and, with this aim, made the stockholders individually liable for the debts of the corporation until the capital stock was paid in and a certificate of the payment made by the officers. The individual liability of the stockholders took the place of a corporate fund, until that fund had been duly created; and the individual liability of the officers took the place of the fund, in case their statement that it had been duly created was false. "If the officers do not truly state and record the facts which exempt them from liability, they are made liable directly to every creditor of the company, *who by reason of their wrongful*

*acts* has not the security, for the payment of his debt out of the corporate property, on which he had a right to rely. * * * it gives a civil remedy, at the private suit of the creditor only, and measured by the amount of his debt, it is as to him clearly remedial. To maintain such a suit is not to administer a punishment imposed upon an offender against the state, but simply to enforce a private right secured under its laws to an individual." (Emphasis supplied.) A liability under a statute such as the court was concerned with in the above case is quite different from the liability imposed under the incorporation statute of Arkansas.

It seems to me that the Arkansas statute, as construed by the Supreme Court of that state, is directed to punishing the infraction of the statute in not filing the articles of association in the office of the County Clerk, as well as with the Secretary of State. I do not see how it can be said that such a statute affords a private remedy to a person injured by the wrongful act of nonfiling. The corporation is considered by the Supreme Court of Arkansas as a *de facto corporation.* No person and no creditor has been, or could be, injured in the slightest degree, directly or indirectly, by the failure of one of the officers to file the articles in the offices of the County Clerk. This was a mere technical omission to comply with the details of requirements under the statute. It did not affect the right of the corporation to do business in the same way as a *de jure* corporation, with rights to corporate functions and attributes, complete as against all the world except the State of Arkansas acting directly against the corporation. Bank of Midland v. Harris, supra. There was no wrong committed against any individual in not filing the articles with the County Clerk. To subject an innocent party, who happens to be an incorporator or original stockholder, to what may prove great financial losses or ruin, in being obliged to pay personally all the debts of the corporation merely because someone who should have complied with this technical requirement failed to do so, seems to me to subject appellant to a liability that is clearly penal in its nature.

Unless it be held that, under Tennessee law, the incorporators or original stockholders of a *de facto* corporation are personally liable for all the debts of the corporation for failure to comply with the minor requirements of filing, the judgment should be reversed; and, in my opinion, such should be the holding of this court.