FACTORS ETC., INC., and Boxcar Enterprises, Inc., Plaintiffs-Appellees,

v.

PRO ARTS, INC. and Stop and Shop Companies, Inc., Defendants-Appellants.

Docket 80–7692.

United States Court of Appeals, Second Circuit.

Submitted Dec. 6, 1982.

Decided Jan. 12, 1983.

Michael C. Silberberg, Geri S. Krauss, and Golenbock & Barell, New York City, submitted a brief for plaintiffs-appellees in support of the petition for rehearing.

William J. Davis, Schulman, Berlin & Davis, New York City, submitted a brief for defendants-appellants in opposition to the petition for rehearing.

Before MANSFIELD and NEWMAN, Circuit Judges, and CARTER,* District Judge.

NEWMAN, Circuit Judge:

On June 29, 1981, this panel of the Court, by a divided vote, issued an opinion reversing the District Court's grant of summary judgment in favor of the plaintiffs-appellees and the issuance of a permanent injunction barring the defendants-appellants from marketing a poster depicting Elvis Presley. *Factors, Etc., Inc. v. Pro Arts, Inc.,* 652 F.2d 278 (2d Cir.1981). The basis for that ruling, familiarity with which is assumed, was that in the absence of authoritative guidance from the courts of Tennessee, we would deem controlling in this di-

* The Honorable Robert L. Carter of the United States District Court for the Southern District of New York, sitting by designation.

versity case the decision of the Sixth Circuit in *Memphis Development Foundation v. Factors, Etc., Inc.,* 616 F.2d 956 (6th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980). *Memphis Development,* also a diversity case requiring application of Tennessee law, had held that Tennessee does not recognize a descendible right of publicity. Upon the return of the instant case to the District Court for the Southern District of New York, plaintiffs called to Judge Tenney's attention a decision of the Tennessee Chancery Court, issued October 2, 1981, which held that Tennessee law does recognize a descendible right of publicity. *Commerce Union Bank v. Coors of the Cumberland, Inc.,* 7 Media L.Rptr. 2204 (Chan. Ct. Davidson Cty. Tenn.1981). That decision, not officially reported, was issued prior to the issuance of our mandate in the instant case.

Judge Tenney thereupon stayed entry of judgment for the defendants pending an application by the plaintiffs to petition this Court to recall its mandate and consider an untimely petition for rehearing in light of the alleged intervening change in state law. *See Braniff Airways, Inc. v. Curtiss-Wright Corp.,* 424 F.2d 427 (2d Cir.), *cert. denied sub nom. Addabbo v. Curtiss-Wright Corp.,* 400 U.S. 829, 91 S.Ct. 59, 27 L.Ed.2d 59 (1970). Plaintiffs diligently sought such relief, and we granted leave to file their petition for rehearing to assess the significance of the Chancery Court's decision in *Commerce Union Bank.* Supplemental briefs have been received.

Fortunately, a recent development in the Tennessee Chancery Court has made it unnecessary for us to determine whether *Commerce Union Bank* is of sufficient authoritativeness to warrant our disregard of the Sixth Circuit's decision in *Memphis Development.*[1] On November 24, 1982, the Chancery Court, acting through a different judge from the one who rendered the decision in *Commerce Union Bank,* ruled that Tennessee does not recognize a descendible right of publicity. *Lancaster v. Factors, Etc., Inc.,* 8 Media L.Rptr. —— (Chan.Ct. Shelby Cty.Tenn.1982). The *Lancaster* decision is surely entitled to no less weight than the decision in *Commerce Union Bank* and may even have a special pertinence since it involves a claim by the same parties who are plaintiffs in the instant litigation with respect to a descendible right of publicity concerning Elvis Presley. Whatever the weight to be given an unreported decision of the Tennessee Chancery Court by a diversity court at any stage of litigation, much less at the point where a mandate is sought to be recalled on the basis of an alleged intervening change of state law, we have no doubt that the appearance of two conflicting decisions of the Chancery Court on the precise point at issue affords us no basis for considering the law of Tennessee to have authoritatively been changed since our June 29, 1981, decision.[2] The motion to

---

1. The parties sharply dispute the significance of *Commerce Union Bank.* Plaintiffs point out that though state trial court decisions are not binding on federal courts, they are entitled to "proper regard." *Commissioner v. Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–1783, 18 L.Ed.2d 886 (1967) (federal question case involving state law issue). They also cite Sixth Circuit authority relying on an unreported Chancery Court decision. *Royal Indemnity Co. v. Clingan,* 364 F.2d 154, 157–58 (6th Cir.1966). Defendants respond that under Tennessee law unpublished opinions, even of the state's highest court, are not to be given precedential force, *Phoenix Cotton Oil Co. v. Royal Indemnity Co.,* 140 Tenn. 438, 205 S.W. 128 (1918); *see Southern Railway Co. v. Foote Mineral Co.,* 384 F.2d 224, 228 (6th Cir.1967), and that unpublished, non-precedential state court decisions are not entitled to be given weight by diversity courts. *King v. Order of United Commercial Travelers,* 333 U.S. 153, 159, 68 S.Ct. 488, 491–492, 92 L.Ed. 608 (1948); *see Doggrell v. Great Southern Box Co.,* 206 F.2d 671, 674–76 (6th Cir.1953).

2. In light of the current stand-off in the Tennessee Chancery Court created by the *Lancaster* decision, we need not determine whether the ruling in *Commerce Union Bank,* whatever its pre-*Lancaster* significance for a diversity court, would apply to a case involving the distribution of a poster featuring the name and likeness of a celebrity but not promoting a commercial product (other than the poster itself). *Commerce Union Bank* involved a use of the likeness of Lester Flatt, a well-known singer of bluegrass music, on a poster promoting the sale of Coors beer. The decision notes that the case does not involve "publication of Lester Flatt's likeness

recall the mandate and the petition for rehearing are denied.

MANSFIELD, Circuit Judge (dissenting):

I would grant the petition for reconsideration for all of the reasons stated in my earlier dissent in this case, published at 652 F.2d 278, 284–90 (2d Cir.1981).

The conflicting Tennessee Chancery Court decisions only serve to emphasize that, with due respect for our distinguished and able colleagues of the Sixth Circuit, we are in as good a position as they to divine what would be the position of the Supreme Court of Tennessee on the issue of whether the right of publicity is descendible. The author of this panel's majority opinion believes that, were it not for the Sixth Circuit's decision in *Memphis Development Foundation v. Factors, Etc., Inc.,* 616 F.2d 956 (6th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980), he would probably, if serving on the Tennessee Supreme Court, uphold descendibility. 652 F.2d at 282. The writer would certainly do so. In addition, Judge Harry W. Wellford, who as a district judge for the Western District of Tennessee originally upheld descendibility in *Memphis Development,* 441 F.Supp. 1323 (W.D.Tenn.1977), which was later reversed, 616 F.2d 956, whereupon he considered himself bound on remand to enforce the Court of Appeals' decision as the "law of the case," see *Memphis Development Foundation v. Factors, Etc., Inc.* (No. 77–2545), Memorandum Opinion, Nov. 24, 1982, is now a member of the Sixth Circuit Court of Appeals.

In view of these circumstances and the current conflict between lower Tennessee courts as to that state's law on the subject, I doubt that the Sixth Circuit would conclude that "the orderly development and authoritative exposition of state law," 652 F.2d at 282, would be promoted by our

deferential adherence to its decision in *Memphis Development.* On the contrary, in my view the internal Tennessee state court conflict provides an additional reason for our following the usual practice, where we disagree with the reasoning of another circuit on an issue, of deciding a case according to what we believe to be the more rational basis.

For these reasons I dissent.

in news, biography, *art,* or any matter of public interest. Rather, it involves the use of his likeness to attract attention to an advertisement for consumer merchandise." *Commerce Union Bank, supra,* 7 Media L.Rptr. at 2205 n. 8 (emphasis added). We may safely leave to the Tennessee courts in other cases the intriguing question whether a poster of the sort involved in this case, depicting a celebrity's name and likeness on a poster issued to reap commercial value from his death, would be considered more like "art" or more like "an advertisement for consumer merchandise."