FACTORS ETC., INC. and Boxcar Enterprises, Inc., Plaintiffs,

v.

PRO ARTS, INC. and Stop and Shop Companies, Inc., Defendants.

No. 77 Civ. 4704 (CHT).

United States District Court, S. D. New York.

May 11, 1982.

Golenbock & Barell, New York City, for plaintiffs; Michael C. Silberberg, Geri S. Krauss, Robert M. Kaplan, New York City, of counsel.

Schulman, Berlin & Davis, P. C., New York City, for defendants; William J. Davis, Alice B. Newman, New York City, of counsel.

## OPINION

TENNEY, District Judge.

Plaintiffs Factors Etc., Inc. ("Factors") and Boxcar Enterprises, Inc. ("Boxcar") brought this action alleging that defendants Pro Arts, Inc. ("Pro Arts") and Stop and Shop Companies, Inc. ("Stop and Shop") infringed their exclusive right to exploit the name and likeness of Elvis Presley. The Court granted plaintiffs' motion for a preliminary injunction, 444 F.Supp. 288 (S.D.N.Y.1977), and the Second Circuit affirmed, 579 F.2d 215 (2d Cir. 1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979) ("Factors I"). The Court subsequently entered summary judgment in favor of plaintiffs and issued a permanent injunction prohibiting defendants from marketing Presley memorabilia and directing that proceedings be held before a magistrate to determine damages, 496 F.Supp. 1090 (S.D.N.Y.1980). That decision was reversed on appeal by the Second Circuit, 652 F.2d 278 (2d Cir.1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1973, 72 L.Ed.2d 442 (1982) ("Factors II").

Defendants now move for summary judgment and for damages for wrongful injunction; plaintiffs cross-move for summary judgment or, alternatively, request the Court to stay entry of judgment in this action. For the reasons discussed below, the Court will stay entry of judgment to permit plaintiffs to petition the Second Circuit for recall of its mandate and for rehearing.

### Background

The factual and legal background of this case, briefly stated, is as follows. Elvis Presley formed Boxcar, a Tennessee corporation, during his lifetime, and assigned to it exclusive rights to exploit commercially his name and likeness. Shortly after Presley's death in 1977, Boxcar sold Factors an exclusive license to use Presley's name and likeness in connection with the sale of merchandise. In August 1977, Pro Arts published a memorial poster of Presley, and marketed the poster through various retailers, including Stop and Shop. Factors promptly brought suit to enjoin distribution and sale of the poster. This Court, exercising its diversity jurisdiction pursuant to 28 U.S.C. § 1332, concluded that a descendible right of publicity exists under New York law and entered a preliminary injunction restraining defendants from manufacturing, selling, or distributing the Presley poster and from making any commercial use of Presley's name or likeness. That decision was affirmed by the Second Circuit in Factors I.

In the meantime, Factors' right to an exclusive license to exploit commercially Presley's name and likeness was challenged in another suit. The Memphis Development Foundation sued Factors in federal court in Tennessee to prevent Factors from interfering with its plan to erect a large statue of Presley in downtown Memphis and to raise funds for its project by selling small pewter replicas of the proposed statue. Factors counterclaimed to restrain distribution of the statues. The district court entered a permanent injunction in Factors' favor, *see Memphis Development Foundation v. Factors Etc., Inc.,* 441 F.Supp. 1323 (W.D.Tenn. 1977), but its decision was reversed by the Sixth Circuit, 616 F.2d 956 (6th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980). Maintaining that "Tennessee courts have not addressed this issue directly or indirectly, and we have no way to assess their predisposition," the Sixth Circuit nevertheless concluded, based on policy considerations, that the right of publicity is not descendible. 616 F.2d at 958.

When Factors subsequently moved for summary judgment in this action, the Court granted the motion and issued a permanent injunction, 496 F.Supp. 1090. Pro Arts ap-

pealed, arguing that Tennessee law, as enunciated by the Sixth Circuit in *Memphis Development*, and not New York law, was applicable to the action. Despite its earlier affirmance of the preliminary injunction, the Second Circuit reversed, concluding that the case should be resolved on the basis of Tennessee law; that Tennessee law afforded no answer to the question whether the right of publicity is descendible; and that in the absence of Tennessee law, it should defer to the Sixth Circuit's holding in *Memphis Development*. 652 F.2d at 281, 283.

On the basis of the Second Circuit's decision, defendants now move for summary judgment in their favor and for an assessment of damages for wrongful injunction against plaintiffs. Plaintiffs cross-move for summary judgment in their favor, citing *Commerce Union Bank v. Coors*, 7 Med. L.Rptr. 2204 (No. 81–1252–III, Tenn.Ch., Oct. 2, 1981), a recent decision of the Tennessee Chancery Court holding that under Tennessee law, the right of publicity is descendible. Alternatively, plaintiffs have requested the Court to stay entry of judgment in this action, so that they may petition the Second Circuit to recall its mandate and rehear this case on the basis of the *Commerce Union Bank* decision.

*Discussion*

■ Defendants argue that the Court should not stay this action, first, because the Second Circuit has granted motions to recall a mandate only to correct clerical errors, to clarify ambiguities, and in other similar instances; and second, because the Second Circuit is bound by "the law of the case" as enunciated in its decision in Factors II and thus cannot consider the effect of the *Commerce Union Bank* decision. However, the Second Circuit's authority to recall a mandate is not as limited as the defendants would argue. In *Braniff Airways, Inc. v. Curtiss-Wright Corp.*, 424 F.2d 427 (2d Cir.), *cert. denied*, 400 U.S. 829, 91 S.Ct. 59, 27 L.Ed.2d 59 (1970), the court stated:

It seems clear to us that we have the power to enlarge the time to petition for rehearing, F.R.A.P. 26(b), 40, and to mod-

ify an erroneous decision although the time for rehearing may have expired. See *United States v. Certain Land*, 420 F.2d 370 (2d Cir. 1969) (deleting award of interest three months after original decision). See also *National Comics Publishers v. Fawcett*, 198 F.2d 927 (2d Cir. 1952) (court of appeals may change and modify mandate of prior term). Accord, *United States v. 63.04 Acres of Land*, 257 F.2d 68, 69 (2d Cir.1958).

424 F.2d at 429. Braniff was a diversity case involving an interpretation of Florida law. After the Second Circuit issued its mandate, the Florida Supreme Court reversed an intermediate appellate court decision on which the Second Circuit had relied. Stating that "[t]his Circuit has long shown considerable willingness to correct what it believed an erroneous interpretation of the law when an intervening state decision seemed to indicate a better view," *id.*, the court reconsidered its earlier decision and modified it in accordance with the new state court decision. See also *Dilley v. Alexander*, 627 F.2d 407, 410–11 (D.C.Cir. 1980); *American Iron and Steel Inst. v. EPA*, 560 F.2d 589, 592–93 (3d Cir. 1977), *cert. denied*, 435 U.S. 914, 98 S.Ct. 1467, 55 L.Ed.2d 505 (1978); *Greater Boston Television Corp. v. FCC*, 463 F.2d 268, 275–79 (D.C.Cir.1971), *cert. denied*, 406 U.S. 950, 92 S.Ct. 2042, 32 L.Ed.2d 338 (1972).

■ Moreover, as *Braniff* illustrates, the law of the case doctrine does not prevent the Court of Appeals from reconsidering its earlier decision. The doctrine " 'does not rigidly bind the appellate court, but is addressed to [the court's] good sense, and the court will depart from its prior legal pronouncements when the circumstances of the case warrant.' " *Zichy v. City of Philadelphia*, 590 F.2d 503, 508 (3d Cir. 1979), quoting 1B Moore's Federal Practice ¶ 0.404[10], at 573 (2d ed. 1965). Federal courts have not hesitated to deviate from their earlier mandates when there has been a supervening change in the applicable law. See *Braniff Airways, Inc. v. Curtiss-Wright Corp., supra; Zichy v. City of Philadelphia, supra; Maryland Cas. Co. v. Hallatt*, 326

F.2d 275 (5th Cir.), *cert. denied,* 377 U.S. 932, 84 S.Ct. 1335, 12 L.Ed.2d 296 (1964). *Cf. Banco Nacional v. Farr,* 383 F.2d 166 (2d Cir. 1967), *cert. denied,* 390 U.S. 956, 88 S.Ct. 1038, 20 L.Ed.2d 1151 (1968) (appellate court may deviate from Supreme Court mandate on basis of newly enacted federal statute). A federal court sitting in diversity has a duty to apply a new rule of state law that relates to an action sub judice. *Vandenbark v. Owens-Illinois Glass Co.,* 311 U.S. 538, 543, 61 S.Ct. 347, 350, 85 L.Ed. 327 (1941). Although in *Vandenbark,* the Court specifically referred to state law "in accordance with the then controlling decision of the highest state court," *id.,* it has long been recognized that the responsibility of federal courts in a diversity action to ascertain and apply state law is not limited to decisions of a state's highest court. *See Stoner v. New York Life Ins. Co.,* 311 U.S. 464, 467, 61 S.Ct. 336, 337, 85 L.Ed. 284 (1940); *West v. American Tel. & Tel. Co.,* 311 U.S. 223, 236–37, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940); *Woodruff v. Tomlin,* 616 F.2d 924, 928–29 (6th Cir.), *cert. denied,* 449 U.S. 888, 101 S.Ct. 246, 66 L.Ed.2d 114 (1980). *See also Maryland Cas. Co. v. Hallatt, supra* (earlier mandate vacated based on a supervening Florida appellate court decision).

■ Although *Commerce Union Bank,* as a trial court decision, does not bind the federal courts, it is nevertheless entitled to "proper regard." *Commissioner v. Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *see Dennis v. Railroad Retirement Bd.,* 585 F.2d 151, 154 (6th Cir. 1978). Moreover, the Sixth Circuit has, in the past, relied on unreported Tennessee Chancery Court decisions. *See Royal Indem. Co. v. Clingan,* 364 F.2d 154 (6th Cir. 1966). Both Factors II and Memphis Development were decided before the Tennessee court's decisions in *Commerce Union Bank*; both circuit courts stated that their holdings were made in the absence of *any* Tennessee case to guide them. Thus, the *Commerce Union Bank* decision is particularly significant as the first Tennessee case to address the issue to hold that the right of publicity is descendible.

■ For these reasons, this Court will stay entry of judgment in this case to permit plaintiffs to petition the Second Circuit to recall its mandate and to rehear this case.

So ordered.