VERYFINE PRODUCTS,
INC., Plaintiff

v.

PHLO CORPORATION, Defendant.

Civil Action No. 99–12218–WGY.

United States District Court,
D. Massachusetts.

Nov. 16, 2000.

Robert Ciociola, Somerville, MA, for Veryfine Products, Inc.

John Salsberg, Michael R. Schneider, Susan B. Church, Salsberg & Schneider, Boston, MA for Phlo Corp.

Robert Ciociola, Somerville, MA, for Donald E. Smallwood, Jr., Francis X. Orfanello, Sam Bowden.

## MEMORANDUM

YOUNG, Chief Judge.

## I. INTRODUCTION

This case involves a contract dispute between Veryfine Products, Inc. ("Veryfine"), a Massachusetts corporation engaged in manufacturing fruit juices and other beverages under its own label and for sale under the labels of other companies, and Phlo Corporation ("Phlo"), a Delaware corporation with a principal place of business in New York City engaged in the business of selling iced teas, lemonades and fruit flavored beverages under the label "McCoy's."

The issue that was before this Court on oral hearing on February 3, 2000, concerned the existence of a duplicative lawsuit filed by the Defendant Phlo against Veryfine on October 26, 1999, in the New York State Supreme Court, exactly *one day* after this action was filed by Veryfine here in the United States District Court for the District of Massachusetts. The

New York State action was subsequently removed by Veryfine to the United States District Court for the Southern District of New York (the "Southern District"). Subject matter jurisdiction in both suits is premised on the diversity of the parties.

Phlo has brought this Motion to Dismiss, Transfer or Stay the action before this Court primarily on the grounds that venue is more appropriate in the Southern District of New York. On February 3, 2000, after oral argument, this Court DENIED the Motion to Dismiss, Transfer or Stay. This memorandum sets out the reasons for that ruling.

## II. FACTUAL BACKGROUND

The following facts are taken from the Complaint, unless otherwise indicated. On April 27, 1999, Veryfine and Phlo entered into a written Contract Manufacturing & Packaging Agreement (the "Agreement") under which Veryfine agreed to manufacture and bottle beverages for Phlo using materials, ingredients, and supplies provided by Phlo and manufactured in accordance with Phlo's specifications. *See* Compl. ¶¶ 8–9. Pursuant to the Agreement, Phlo was required to provide a firm schedule of orders for the following month's production of its products (i.e. one month in advance). Once such a schedule was furnished to Veryfine, it could only be altered by mutual written agreement. The Agreement mandated a minimum production order of 200,000 cases per month. *See id.* ¶ 3. If Phlo did not order the minimum number in a given month, it remained liable for the manufacturing fee for the unordered cases unless Veryfine was able to replace all or part of the production (in which case the fee would be waived or reduced). Payments were due within 14 days of Veryfine's invoice date and Veryfine had no obligation to manufacture products for Phlo during any period of time in which payments were overdue. The term of the Agreement was one year beginning April 27, 1999. The Agreement provided that it was to be construed and

enforced in accordance with the laws of the Commonwealth of Massachusetts applicable to agreements made and to be performed entirely within Massachusetts.

Veryfine's Complaint alleges that Phlo breached the Agreement almost from its inception. Among the alleged repeated problems encountered were failure or refusal to provide production scheduling orders by the deadline, late provision of such scheduling orders, production orders that were well below the minimum (e.g. a May production order of only 39,000 cases), and repeated manufacturing disruption due to problems in delivery of Phlo's supplies to Veryfine's facility. These failures allegedly caused Veryfine to produce only a limited number of cases of product by the monthly deadlines. In particular, production in June had to be rescheduled several times, causing disruption to other scheduled production runs for Veryfine's other customers. The Complaint sets out a pattern of·late production orders or situations in which Phlo tried to reschedule (delay) delivery of portions of the product in each monthly period. Furthermore, there was allegedly a complete failure to schedule any production runs in September or October within the time specifications of the Agreement. Phlo also allegedly failed or refused to pay Veryfine's invoices.

On September 14, 1999, Veryfine sent a letter to Phlo's General Counsel, Anne Hovis, notifying her of the alleged breaches of contract and threatening to terminate the agreement if ongoing nonpayment of invoices was not cured within 30 days. As of the date of the Complaint, those payments were never made.

Veryfine brought this action on October 25, 1999, alleging breach of contract and breach of the covenant of good faith and fair dealing, and requesting, in addition to monetary damages, declaratory relief that it is not obliged to furnish any further services to Phlo. Phlo's lawsuit, with its own claims brought on substantially the same facts (from Phlo's point of view), was

filed in the New York State Supreme Court on October 26, 1999.

## III.  ANALYSIS

### A.  Motion to Dismiss

Phlo seems to have confused venue with jurisdiction, for in its motion papers it has asked, in addition to a change of venue, for *dismissal* of the Massachusetts action in favor of the action in the Southern District of New York. Issues pertaining to this Court's deference to the Southern District of New York are best analyzed as a venue matter.  Phlo has also questioned the amount in controversy, however, a matter of subject matter jurisdiction where dismissal may indeed be the appropriate remedy.

■ Veryfine's Complaint alleges losses and damages including but not limited to outstanding overdue invoices in the amount of $56,869.94.[1] Veryfine also generally alleges lost production, disrupted scheduling of its production lines, interference with its commitments to other customers, and lost good will.  *See* Compl. ¶ 42.  Phlo argues, quite correctly, that $56,869.94, with nothing more, fails to satisfy the jurisdictional amount requirement of $75,000.01.  Veryfine rebuts that argument by indicating that the $56,869.94 amount is only one specifically identified portion of its damages.  According to the Supplemental Affidavit of Mark Thurber, Veryfine's General Counsel, Veryfine is still in the process of calculating its damages.  "[P]reliminary calculations indicate that the amount of damages that Veryfine has suffered as a direct result of Phlo's breaches of the Agreement with Veryfine will exceed $300,000."  Thurber Aff. ¶ 4.

■ When faced with a motion to dismiss for failure to show the requisite amount in controversy, a plaintiff may satisfy its burden of proving jurisdiction "by showing that it does not appear to a legal certainty that its claim is for less than the jurisdictional amount [citation omitted] ... by amending the pleading or by submitting affidavits which sufficiently substantiate the alleged amount in controversy."  *Hardemon v. City of Boston*, 144 F.3d 24, 26–7 (1st Cir.1998).  The outstanding invoices alone are alleged to be over $56,000.  The disruption to the business could easily constitute $19,000, and an affidavit before this Court shows that it could be much greater than that.[2]  Thus it does not appear to a legal certainty that Veryfine's claim is for less than the jurisdictional amount.  The motion to dismiss on this ground was therefore DENIED.[3]

### B.  Motion to Transfer Venue

Phlo asked this Court to transfer this case to the Southern District of New York, where its own duplicative lawsuit was filed one day after the filing of this suit by Veryfine.

#### 1.  Procedural and Factual Posture

Resolution of the venue issue requires an understanding of the timing and circumstances surrounding procedural events in this case.  According to Phlo, after the pattern of disruption in production, which each party attributes to the other, officers

---

1.  Phlo asserts that this amount is exaggerated and fails to take account of set-offs and reductions for payment make to Veryfine amounting to $11,571.92.  *See* Def. Mem. at 13, n. 5.

2.  Although not argued by Veryfine, the $56,869.94 figure also seems to fail to take into account Veryfine's lost profits on' the remainder of the contract, through April 27, 2000, in which Phlo apparently would be obliged to make monthly production requests of at least 200,000 cases.  Oddly, Veryfine's Complaint does not appear to seek expecta-

tion damages on the remainder of the contract.  Such damages would add to the showing of the jurisdictional amount.

3.  Phlo's separate suit in the Southern District of New York claims $5,000,000 in damages.  Although that action could very well become a counterclaim in the suit here, it has not been weighed in determining the jurisdictional amount.  The point remains, however, that Phlo's assertion that this is a "small potatoes" case is unsubstantiated.

of the two corporations engaged in a series of telephone and written communications in an attempt to address the problems. *See* Def.'s Mot. at 5. On October 25, 1999, Phlo notified Veryfine that it intended to file an action in New York State Supreme Court the following day. Phlo claims that Veryfine did not indicate any intention to sue Phlo at that time. That *same day,* in what Phlo believes to be an apparent effort to reach the courthouse door first, Veryfine filed the instant action. Phlo filed its New York State action the *next day* (October 26) alleging breach of contract, tortious misrepresentation, breach of the covenant of good faith dealing, and negligence. *See id.* at 6. On November 24, 1999, Veryfine filed a Notice of Removal which removed the case from the New York State Supreme Court to the United States District Court for the Southern District of New York. On December 2, 1999, Veryfine filed a motion to Dismiss, Transfer or Stay the Southern District action which appeared to be pending at the time of this Court's ruling.

Veryfine admits that threats of litigation were contained in the various discussions between the principals and counsel of the corporations in their efforts to resolve their differences. *See* Pl.'s Opp'n at 6. Veryfine claims that such threats were made on more than one occasion and were taken as a negotiation tactic rather than notification of an imminent lawsuit. *See id.* at 12. Thus, Veryfine sees the timing of the lawsuits either as coincidence or as Phlo's rapid next-day response to its actually having been sued in Massachusetts.

### 2. Theory of Implied Waiver

Veryfine's Notice of Removal to the Southern District reads, "Veryfine removes this case to this court and requests that this Court assume jurisdiction of the case and take all further action as may be required to determine this controversy." Def.'s Mem. at Ex. E at 2. Phlo argues that this sentence in the Notice of Removal expresses Veryfine's assent to venue in the Southern District and that Veryfine

cannot claim that venue is more appropriate here.

Phlo has misunderstood the concept of venue. Veryfine's request to the Southern District may evidence a consent to *jurisdiction* in the Southern District. Venue, however, is not a jurisdictional issue. When Veryfine requested that the Southern District take charge of the case, it implicitly included in that request that the Southern District be empowered to make decisions respecting venue of the case. State court defendants should not be required to include in their Notice of Removal a phrase that reads, "Defendants reserve and do not waive the right to challenge venue," in order to preserve that right after removal.

As the Second Circuit has noted, "[a] party who removes an action from state to federal court does not, in so doing, waive the defense of improper venue as to the underlying state court action." *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.,* 138 F.3d 65, 72 (2d Cir.1998)(citing *Moss v. Atlantic Coast Line R.R. Co.,* 157 F.2d 1005, 1006 [2d Cir.1946] [A "defendant is not precluded from having the suit dismissed because its motion to remove was in any sense the waiver of a right, for it has waived nothing by taking that action"] ); *Greenberg v. Giannini,* 140 F.2d 550, 553 (2d Cir.1944). As Learned Hand further explained:

> At times courts have indeed spoken as though removal to a federal court "waived" some defect of venue .... When a defendant removes an action from a state court in which he has been sued, he consents to nothing and "waives" nothing; he is exercising a privilege unconditionally conferred by statute, and, since the district court to which he must remove it is fixed by law, he has no choice, without which there can be no "waiver."

*Greenberg,* 140 F.2d at 553 (citations omitted).

This Court appears to have disagreed with this conclusion in *JMTR Enter., L.L.C. v. Duchin*, 42 F.Supp.2d 87, 99 (D.Mass.1999). Therein, this Court wrote, "removal of an action to a proper forum under § 1441(a) frequently has been considered a waiver or cure of any defect in the original venue of the removed action .... The Daikon Group removed this action from the Middlesex Superior Court. The District of Massachusetts is the proper venue for an action removed from Middlesex Superior Court.... Thus, the Daikon Group cannot now argue that venue in the District of Massachusetts is improper." *Id.* at 99. That conclusion, however, was reached by this Court when sitting in consideration of an action removed *to this Court itself.* The proper forum for the question in the Veryfine case is the Southern District, which must consider whether the challenge to venue was waived by Veryfine's removal. This Court's review of the Second Circuit precedent suggests that the answer to that question is in the negative. Regardless, the implied waiver of improper venue in another forum says nothing about whether venue is proper here. The real question is whether discretionary transfer should occur as between two jurisdictions vested with proper venue. That question is analyzed *infra.*

### 3. Timeliness of Motions Filed

Phlo argues that Veryfine failed to make a timely motion in the Southern District objecting to venue there and thus has waived its claim that venue is more appropriate here. The petition to remove was filed on November 24, 1999, resulting in a five-day extension of time to respond to the Complaint under Fed.R.Civ.P. 81(c). Veryfine did not file its motion to dismiss until December 2, 1999, which is eight full days after the removal petition. *See* Def.'s Mot. at 3.

Phlo's calculation is incorrect. Rule 6(a) of the Federal Rules of Civil Procedure provides that "[w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." Thanksgiving Day is a legal holiday, and November 27th and 28th were weekend days. Therefore, using the guidelines in Rule 6(a), Veryfine timely filed its motion on the fifth day, within the limit. Phlo's motion on this ground was therefore DENIED.

### 4. Standards for Transfer of Venue

If venue is deemed proper in Massachusetts, Phlo seeks transfer of venue pursuant to 28 U.S.C. § 1404(a), which reads: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "Section 1404(a) is a codification of the doctrine of forum non conveniens." *Albion v. YMCA Camp Letts,* 171 F.3d 1, 2 (1st Cir.1999).

"Where identical actions are proceeding concurrently in two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in a choice-of-venue decision." *Cianbro Corp. v. Curran–Lavoie, Inc.,* 814 F.2d 7, 11 (1st Cir.1987). *See also Nowak v. Tak How Investments, Ltd.,* 94 F.3d 708, 719 (1st Cir.1996) (there is a "strong presumption in favor of a plaintiff's forum choice, [against which] the defendant must bear the burden of proving ... that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum"). In *Nowak,* the First Circuit quoted the Supreme Court's decision in *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947) for the proposition that a plaintiff should not be deprived of the advantages of its own choice of jurisdiction except upon a clear showing of facts which either "(1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiffs convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the

court's own administrative or legal problems." 94 F.3d at 720. Thus, the fact that Veryfine filed its suit first ordinarily would preclude a transfer of venue to the court of the second filing. There are, however, certain exceptions.

### 5. Special Circumstances

■ Courts have recognized that there may be an exception to the "first filed" rule when there are "special circumstances" justifying a transfer. These circumstances are usually found in situations in which one party has won a race to the courthouse by jumping the gun and filing a declaratory judgment action in a forum that has little relation to the dispute.

■ In *Davox Corp. v. Digital Sys. Int'l, Inc.*, 846 F.Supp. 144 (D.Mass.1993) (Wolf, J.), Judge Wolf declined to exercise jurisdiction over Davox's patent infringement suit in favor of a duplicative suit in the Western District of Washington. "Rather than responding to the invitation to enter into discussions to resolve the matter, as Davox represented it would, Davox filed this action in an evident effort to obtain a forum more convenient to it than the Western District of Washington." *Id.* at 148. In reaching this conclusion, Judge Wolf wrote, "Davox should not be permitted to take advantage of the fact that DSI responsibly deferred filing potentially protracted and expensive litigation and, indeed, was perhaps misled into believing it would not be prejudiced by doing so by Davox's responses to its letters." *Id. See also Factors, Etc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir.1978) ("When the declaratory judgment action has been triggered by a notice letter, this equitable consideration may be a factor in the decision to allow the later filed action to proceed to judgment in the plaintiffs' chosen forum.").[4] The pattern that emerges from the cases indicates that transfer may be appropriate where a party has won the

race to the courthouse by misleading his opponent into staying his hand in anticipation of negotiation; or by reacting to notice of imminent filing by literally sprinting to the courthouse the same day. The first-filed suit is particularly suspect where a party, as in *Davox*, has brought a declaratory judgment action for non-infringement. The true underlying claim, of course, was patent infringement, and in cases such as this the circumstances demonstrate that the winner of the race to the courthouse should not enjoy the presumption of preferable venue.

Phlo cites *Firmani v. Clarke*, 325 F.Supp. 689, 693 (D.Del.1971) for the proposition that a plaintiff's choice of forum is not entitled to great weight when it involves simply "winning the race to the courthouse door." *Firmani* was a case, however, that involved a putative securities class action lawsuit where three related suits were to merge into one for convenience of the class action. The courts thus had to select the venue for the consolidated case. The court did not attach weight to the first party to reach the courthouse door because the conveniences of witnesses and other parties suggested that one of the other two was the best venue for the case. *Firmani* was thus a case about transfer as among multiple cases brought by different plaintiffs, not about transfer as between a first-to-file plaintiff and a second-to-file defendant. The *Firmani* court chose among several plaintiffs; it did *not* choose between the plaintiff and the defendant. *Firmani* thus cannot act to overcome the presumption that a plaintiff is entitled to his forum choice as against a subsequent duplicative suit brought in another venue by the original defendant.

■ Although a suit initiated immediately in response to a threat of suit may raise the question of whether the emerging

---

**4.** *Rev'd on other grounds* 652 F.2d 278, *cert. denied* 456 U.S. 927, 102 S.Ct. 1973, 72 L.Ed.2d 442, on remand 541 F.Supp. 231, *reh'g denied* 701 F.2d 11, *stay vacated* 562 F.Supp. 304.

plaintiff merely won a race to the courthouse, the analysis is different when negotiations are ongoing and both sides are aware that litigation could occur at any time, brought by either side. When the negotiations are long-term and ongoing and there is no false implication that a party will refrain from litigation during those negotiations, the first-filed presumption may remain intact. *See GT Plus, Ltd. v. Ja–Ru, Inc.*, 41 F.Supp.2d 421, 425–7 (S.D.N.Y.1998) (where parties had communicated for several months without resolving their dispute, the first-filed action did not cut off a promising dialogue, nor did the plaintiff therein falsely imply that it would refrain from litigation). That is to say, the emerging plaintiff is not said to have "jumped the gun" by racing to the courthouse ahead of an opponent who has indicated an ongoing and continuous threat of litigation.

According to the Affidavit of Anne P. Hovis, Phlo's Executive Vice President and General Counsel, the parties were involved in negotiations in early October 1999. *See* Hovis Aff. ¶¶ 3–9. Sometime during the middle of October, after an unproductive telephone call with Veryfine's General counsel Mark Thurber, Anne Hovis spoke to James Hovis, President and CEO of Phlo, and they decided to file a complaint. That complaint was drafted during the next couple of days, and on October 25, a "courtesy copy" was sent to Thurber informing him that the complaint would be filed the next day. There was, however, no documentary evidence, such as a cover letter, of this courtesy copy in the record before this Court. According to Anne Hovis, on October 26, she received a facsimile transmission from Robert Ciociola, enclosing a copy of the Veryfine complaint which he stated had been filed by Veryfine on October 25 at 2:39 p.m. (The court's filing receipt shows 2:46 p.m.) After she received the fax, Anne Hovis spoke with Mr. Ciociola by telephone and informed him that she had authorized the filing and service of Phlo's New York Complaint the previous day. Phlo's Complaint, however, was filed on October 26, 1999 at 3:08 p.m.[5]

Anne Hovis' affidavit thus seems to establish a factual scenario in which Veryfine may have had actual notice of a suit *to be filed* the very next day and managed to file the same day as the notice, either through the Herculean efforts of its legal department that very same day, or through the submittal of a complaint drafted in anticipation of an appropriate opportunity for filing. This Court finds it compelling that Phlo had drafted a complaint and *actually sent* that Complaint to Veryfine on October 25th. Although it would be preferable to see tangible evidence of that delivery,[6] Anne Hovis' affidavit is uncontradicted on the point that she sent the courtesy copy. There is a flaw, however, in her affidavit. It merely indicates that she *sent* the courtesy copy to Veryfine, and does not purport to confirm that Veryfine actually received notice of the impending lawsuit. It also does not indicate the method of transmission—whether it was by instantaneous facsimile or by normal mail that could take a couple of days. It is quite possible that the close timing of the lawsuits was merely the coincidence of two parties in an ongoing commercial dispute. In that case, this Court would have no reason to believe that Veryfine actually raced to the courthouse. Rather, it arrived there first on its own, and Phlo happened to follow close behind.

Veryfine did not deny that it had actual notice of Phlo's impending lawsuit to be filed the next day. It does allege in its Complaint that it indicated its displeasure with the way the contract was being performed in a letter of September 14, 1999. *See* Compl. ¶ 36. This indicates that the threat of litigation was present for several weeks prior to the lawsuit, but it fails to contradict Phlo's assertion that negotia-

---

**5.** A time-stamped receipt is in the record.

**6.** The record did not contain a copy of the courtesy copy.

tions were ongoing and that Veryfine decided to strike when it learned that Phlo was about to file suit. Thus Veryfine's revelation, supported by Hovis' own affidavit, supports the conclusion that negotiations *were* ongoing and that this was not a situation in which Phlo would have been surprised to find itself sued by Veryfine in early October. This case, at least until October 25, 1999, does not qualify for an avoidance of the first-to-file rule because no representations were made that litigation ought be stayed pending negotiations.

The question remains as to whether Veryfine's presumption of preferable venue resulting from its first-filing status should be overlooked because it had actual notice of an imminent complaint and literally ran out of door of its office on the very same day to beat its opponent in order to secure home-court advantage. Hovis' affidavit lends support to that theory but falls short of bearing Phlo's burden of persuasion on a transfer of venue motion because she has not shown that Veryfine actually knew of the immediately impending suit and then chose to usurp venue by an instantaneous filing. Perhaps these facts will come to light in discovery, but at the time of the oral hearing there was insufficient evidence to grant a transfer of venue on the basis that Phlo's General Counsel "sent" a courtesy copy of the Complaint to the prospective opponent. This is especially so where no documentary proof has been submitted of that transmission.

### 6. The Balance of Conveniences

■ Finally, Phlo attempts to persuade this Court to transfer the case to the Southern District on the grounds that the burdens of litigating here far outweigh any benefits. Under 28 U.S.C. § 1404(a), this Court has discretion to transfer a matter to another District Court by virtue of the convenience of the parties and witnesses and in the interest of justice. Courts essentially look to the forum non conveniens factors to make this decision, and examine the relative convenience to each of the parties, the "relative ease of access to

sources of proof," the "availability of compulsory process for attendance of unwilling" witnesses, and the relative availability of documentary and tangible evidence, as well as the public interest in the administration of justice, including trial efficiency. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Section 1404(a) provides the District Court with somewhat greater discretion than it had in the traditional forum non conveniens analysis. *See Mercier v. Sheraton Int'l Inc.,* 935 F.2d 419, 424 n. 4 (1st Cir.1991), citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 253, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). The balancing analysis remains similar, however.

■ Phlo claims the following facts which it argues indicate either a burden on it, or a factor of convenience in favoring trial in New York:

(1) Phlo has six employees, all of whom were involved in the Agreement negotiations and will be witnesses at trial. Litigation in Massachusetts would be a "hardship." Def.'s Mot. ¶¶ 31, 35;

(2) Several key witnesses for Phlo are employees of Technical Flavor and Fragrance, Inc., and Comax Manufacturing Corp., both headquartered in New York State and both having employees residing in the New York City area. Other key witnesses testifying as to damages are from New York, New Jersey, and Pennsylvania. *See id.* ¶ 32;

(3) Most of the documentary and tangible evidence which Phlo intends to introduce at trial is located in New York City. *See id.* ¶ 34;

(4) Veryfine is a relatively large company with 426 employees, but only six to eight of them dealt with Phlo on a regular basis. *See id.* ¶ 36;

(5) The required testimony of Phlo's employees and the continued presence at trial of at least one employee would completely disrupt Phlo's small operation. *See* Def.'s Mot. ¶ 7. This burden would not be mirrored by the burden on

Veryfine if trial were in New York because Veryfine is a large corporation. A trial in Massachusetts will also require the cost of transporting witnesses to Boston; and

(6) The Agreement said only that its terms are to be construed in accordance with the laws of Massachusetts, and did not include a selection of forum or venue. *See id.* ¶ 11. The New York courts may easily apply Massachusetts law. Furthermore, Massachusetts law will not necessarily govern the non-contract negligence claims in the action.

Phlo urges that these are the circumstances and factors that indicate the burden of litigating in Massachusetts outweighs the benefit and public interest in so litigating. Veryfine responds with its own arguments and examples of factual circumstances in support of the opposite conclusion:

(1) Some Phlo representative will be likely to attend trial every day regardless of its actual location. The "disruption" is the same;

(2) The burden on third-party witnesses in traveling to Boston instead of to New York is negligible;

(3) While correspondence is in the possession of both parties, the bulk of the documents relevant to disputes at issue are in Littleton, Massachusetts, the site of the plant. These include invoices, storage records, shipment records, delivery records, etc.;

(4) Phlo has charged Veryfine with misrepresentation about the capability of the production line. A "site visit" may be necessary to resolve certain factual issues;

(5) All of the operative events at issue took place in Massachusetts. That is where performance was to occur and where breach is alleged to have oc-

curred. There is thus a nexus between the dispute and Massachusetts;

(6) One of Phlo's key witnesses, Kenneth Venti (the former Vice President and CFO) is now President and CEO of a beverage company in Massachusetts and resides in Needham, Massachusetts, not in New York;

(7) A Massachusetts federal court may be presumed to have greater familiarity with Massachusetts law than a New York federal court. Although there was no forum selection clause in the contract, this presumption weighs in favor of Massachusetts as the forum;

(8) Phlo did nothing in the execution or performance of the Agreement to avail itself of the forum of New York in particular.. Phlo is a *Delaware* corporation that happens to have an office in New York. New York is no more appropriate a place for the suit than any other;

(9) Phlo was fully aware it was entering into an agreement with Massachusetts and its employees regularly traveled to Massachusetts in conjunction with performance of that contract. It delivered the raw materials here. It rented warehouse space near the Veryfine plant to store those materials. It had its customers pick up products from the Massachusetts plant;

(10) No Veryfine employee ever visited New York in connection with this contract or any other dealing between these litigants; and

(11) As noted by this Court in *Coady v. Ashcraft & Gerel,* 996 F.Supp. 95 (D.Mass.1998), the difference between Boston and New York is minimal and the District of Massachusetts has a low average caseload and ample judicial resources to handle this case expeditiously.[7]

---

7. Although *Coady* was subsequently reversed, 223 F.3d 1, 4 (1st Cir.2000), this Court adheres emphatically to the views expressed in *Coady* concerning the desirability of allocating judicial business where it can be handled most efficiently, 996 F.Supp. at 100. The appellate panel's vigorous questioning prompted by this aspect of that opinion, however, makes it prudent to point out that the

This Court DECLINED to transfer the suit to New York. These parties have only shown the common "hardships" associated with civil litigation, namely travel, employee absence, document production, etc. Phlo should not be entitled to deference because its operation is small. It is still liable to answer for its alleged contractual breaches wherever it may be sued upon those breaches.

Furthermore, it is not a hardship to travel from New York to Boston in order to appear for a civil trial.[8] Phlo is not a stranger to paying the cost of transportation to send its agents into Massachusetts to contract with Massachusetts corporation. It cannot now claim that such transportation is an unreasonable burden simply because the matter at issue is litigation surrounding one of those contracts. The difference between Boston and New York is even smaller. Furthermore, the record shows that Phlo repeatedly sent representatives to Veryfine's facilities in Massachusetts in order to negotiate the contract and examine the facilities. If those visits were not burdensome at the inception of the contract, they cannot be said to be unusually burdensome after the contract has been breached, absent other compelling circumstances. Because this is primarily a contract claim, the documents appear to be in the possession of both parties and thus the relative convenience of an alternative forum is negligible. To the extent that the capabilities of the manufacturing facility are at issue, the evidence is located entirely in Massachusetts. Finally, this is a case in which a New York company approached a Massachusetts company and engaged in a contract in which there would be production activities *within Massachusetts.* Thus the case concerns the operations and financial interests surrounding production of goods within Massachusetts. The Com-

monwealth has a significant interest in adjudicating that case within its borders, and New York has a lesser interest in Phlo, a Delaware corporation. For these reasons, the motion to transfer was DENIED.

### C. Motion to Stay

■■■ Finally, Phlo asks this court to stay the action pending a resolution of the venue issue in the Southern District. Where there is a "likelihood of substantial overlap" between two lawsuits pending in two federal courts, "a stay of the second filed action" may be "appropriate in order to permit the court of the first filing to rule on the motion to transfer." *Boston and Maine Corp. v. United Trans. Union,* 110 F.R.D. 322, 330 (D.Mass.1986) (Wolf, J.).

This Court is not, however, the court of the second action. It is the court of the *first* filed action. Furthermore, motions appeared to be pending at the time of the oral hearing in the Southern District that would resolve whether that action is to continue in that forum. This Court found no reason to stay its hand in the interim. Indeed, any "staying of the hand" is here the province of the Southern District. The motion to stay the action in this forum was therefore DENIED.

### IV. CONCLUSION

For the above reasons, this Court DENIED Phlo's Motion to Dismiss, Transfer or Stay.

---

result here would be the same even in the absence of this factor.

8. Flying time from La Guardia airport to Logan airport is approximately 40 minutes, and the new Federal Courthouse in Boston is but

a short distance from the airport. Depending on traffic, that could conceivably be a *shorter* total time than a commute from certain northern New York City suburbs to the Southern District courthouse in lower Manhattan.