**BIOLITEC, INC., Plaintiff**

v.

**ANGIODYNAMICS, INC., Defendant.**

**C.A. No. 08–30011–MAP.**

United States District Court,
D. Massachusetts.

Sept. 30, 2008.

Michael K. Callan Doherty, Wallace, Pillsbury & Murphy, P.C., Springfield, MA, for Plaintiff.

William E. Reynolds Bond, Schoeneck & King, PLLC, Albany, NY, for Defendant.

***MEMORANDUM AND ORDER RE: REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANT'S MOTION TO DISMISS***

(Dkt. Nos. 4 & 11)

PONSOR, District Judge.

In this declaratory and breach of contract action, Plaintiff seeks to recover funds he allegedly expended in helping defend Defendant in a patent infringement action. Defendant filed a Motion to Dismiss for failure to state a claim; it also moved for transfer of the case to the Northern District of New York if dismissal were not proper.

---

Defendant's motion was referred to Chief Magistrate Judge Kenneth P. Neiman for report and recommendation. On September 11, 2008, Judge Neiman issued his Report and Recommendation, to the effect that Defendant's Motion to Dismiss should be denied, but the motion to transfer the case should be allowed. His Report and Recommendation contained a footnote at 14 n. 5 warning the parties that any objection would have to be filed within ten days. No such objection has been filed. In view of the fact that both parties are represented by sophisticated counsel, the court must conclude that, in fact, there is no objection to the transfer of this case to the Northern District of New York.

In addition to the lack of any objection, the discussion set forth in the Report and Recommendation regarding transfer is entirely persuasive. *See* Docket No. 11 at 10–12.

In sum, upon *de novo* review, the court hereby ADOPTS the Report and Recommendation (Dkt. No. 11), both based upon the lack of objection and upon the inherent meritoriousness of the recommended ruling.

For these reasons, the court hereby DENIES Defendant's Motion to Dismiss (Dkt. No. 4) but ALLOWS the motion to transfer the case to the Northern District of New York. The clerk is ordered to take whatever action is necessary to assure that this case is transferred.

It is So Ordered.

*REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANT'S MOTION TO DISMISS (Document No. 4)*

NEIMAN, Chief United States Magistrate Judge.

This is a declaratory judgment and breach of contract action in which Biolitec, Inc. ("Plaintiff") seeks to recover from AngioDynamics, Inc. ("Defendant") $1.6 million that it expended in helping defend Defendant in a patent infringement suit. Arguing that Plaintiff's complaint fails to state claims upon which relief may be granted, Defendant has moved to dismiss it pursuant to Fed.R.Civ.P. 12(b)(6). Defendant also asserts that the complaint should be dismissed—or transferred to the United States District Court for the Northern District of New York—because there is a previously-filed action there involving the same parties and the same underlying transaction (hereinafter "the New York action"). Defendant's motion has been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the following reasons, the court will recommend that Defendant's motion be allowed, but only to the extent that it seeks a transfer to the Northern District of New York.

I. *FACTUAL BACKGROUND*

The following factual allegations come from Plaintiff's complaint and are stated in a light most favorable to it. *See Stanton v. Metro Corp.*, 438 F.3d 119, 123–24 (1st Cir.2006). On April 1, 2002, Plaintiff and Defendant entered into a Supply and Distribution Agreement ("SDA"), pursuant to which Plaintiff agreed to sell Defendant certain laser and fiber products. (Complaint ¶ 4, Ex. A.) In November of 2003, another company, Diomed, Inc. ("Diomed"), sued Defendant for patent infringement. (*Id.* ¶ 5.) One basis of that lawsuit involved Defendant's sale of certain products that incorporated and modified the products that Plaintiff had sold to Defendant. (*Id.*)

Sections 7.2, 9.1 and 9.2 of the SDA discussed, as follows, the parties' obligations with respect to potential infringement allegations—such as those brought by Diomed—as well as the parties' indemnification rights:

**7.2 Infringement of Third Party Patents and Rights**.... If a third party asserts that a patent or other proprietary right owned by it is infringed by the manufacture, marketing, sale, distribution or use of a Product, the party against whom such a claim was asserted shall provide the other party with notice of such claim within fifteen (15) days. BIOLITEC agrees to undertake the sole and complete defense, at its sole cost and expense, of any such claim through counsel of its choice and control the settlement of any such claim.... If BIOLITEC fails to take such action, AngioDynamics shall be entitled to do so and BIOLITEC shall promptly reimburse AngioDynamics for pre-agreed upon expenses it incurs, including without limitation reasonable attorney's fees.
**9.1 Indemnification by BIOLITEC.** BIOLITEC agrees to indemnify and hold AngioDynamics harmless from and against any and all Loss that AngioDynamics may incur to the extent that such Loss arises out of or results from (i) a breach of any representation or warranty or agreement given in this Agreement by BIOLITEC, or (ii) the injury, illness or death of any person which arises out of or relates to the manufacture or the design of Products.
**9.2 Indemnification by AngioDynamics.** AngioDynamics agrees to indemnify and hold BIOLITEC harmless from and against any and all Loss that BIOLITEC may incur to the extent that such Loss arises out of or results from (i) the unlawful sale, promotion and distribution of the Products by AngioDynamics in the Territory, (ii) any unauthorized modification or alteration made by AngioDynamics to the Products, (iii) the improper sterilization or labeling of the

Products, (iv) a breach of any representation made or warranty given in this Agreement by AngioDynamics, (v) mishandling of fibers during unpacking and repackaging of bulk fibers delivered to AngioDynamics for the purpose of putting into their kits, or (vi) the design of a product solely by AngioDynamics.
(Complaint, Ex. A.) At or around the time that Diomed commenced its action, Defendant made a demand for indemnification upon Plaintiff. (Complaint ¶ 10.) Although Plaintiff refused this demand, the parties entered into a Joint Defense Agreement ("JDA") dated November 24, 2003. (*Id.* ¶¶ 11, 12.)

Alleging that it had reserved its rights with respect to its indemnity obligations, Plaintiff contributed $1.6 million to Defendant's defense in the Diomed litigation. (*Id.* ¶¶ 12–14.)[1] On September 27, 2007, Plaintiff demanded that Defendant reimburse this $1.6 million in defense costs, a demand Defendant has refused. (*Id.* ¶¶ 15, 16.)

Plaintiff's complaint contains four counts. Count I seeks a judgment declaring, pursuant to 28 U.S.C. § 2201(a), that Defendant "is obligated ... to reimburse Biolitec for the Defense Costs expended by Biolitec in defense of the [Diomed] Litigation." (*Id.* ¶¶ 19, 20.) Count II, entitled breach of contract, alleges that Defendant breached both the SDA and the JDA and seeks damages of at least $1.6 million. (*Id.* ¶¶ 22, 23.) Count III, entitled quantum meruit/unjust enrichment, claims that Defendant has been unjustly enriched by at least $1.6 million. (*Id.* ¶¶ 25, 26.) And Count IV claims a violation of Mass. Gen. L. ch. 93A ("chapter 93A"), to wit, that Defendant's "intentional failure to render payment to Biolitec after demand, as well

---

1. Although it is not mentioned in the complaint, the parties have informed the court that, in March of 2007, a jury rendered a verdict against Defendant in the Diomed litigation in the amount of $9,170,000.

as its continued insistence that Biolitec owes an indemnity obligation under the [SDA]" constitutes "unfair and deceptive" conduct as well as "a willful effort to extort funds from [Plaintiff]." (*Id.* ¶¶ 28, 29.)

## II. PROCEDURAL BACKGROUND

Plaintiff commenced the instant action on January 11, 2008 and, on January 14, 2008, served Defendant with a copy of the summons and complaint. Meanwhile, on January 2, 2008, *Defendant* sued *Plaintiff* in the Northern District of New York, *i.e.*, the New York action. Plaintiff, however, was not served with a copy of the summons and complaint in the New York action until January 15, 2008. Plaintiff also points to the fact that the complaint was not delivered to its corporate office in East Longmeadow, Massachusetts, until January 27, 2008.

Defendant asserts five counts against Plaintiff in the New York action. Three of those counts involve the Diomed litigation: Plaintiff's alleged breach of Sections 7.2 and 9.1 of the SDA, *i.e.*, that Plaintiff undertake the "sole and complete defense" of an infringement suit (Count 1); Plaintiff's alleged breach of the SDA's indemnity provisions (Count 3); and Defendant's entitlement to a judgment declaring its rights under Section 7.2 of the SDA (Count 5). Two other counts in the New York action (Counts 2 and 4) involve similar allegations with respect to a pending patent infringement suit filed in July of 2005 against Defendant by another company, VNUS Technologies, Inc. ("VNUS").

Defendant filed its motion to dismiss in the instant action on February 4, 2008, Plaintiff filed its opposition brief on February 19, 2008, and Defendant filed a reply brief on March 4, 2008. The parties' arguments, as set forth in these briefs, were altered somewhat by a development in the New York action which Defendant brought to the court's attention just prior to oral argument, namely, that Plaintiff filed four counterclaims in the New York action on March 14, 2008. Those counterclaims assert that Defendant is obligated, pursuant to Section 9.2 of the SDA, to indemnify Plaintiff for the $1.6 million it expended in defense of the Diomed litigation (First Counterclaim); that Defendant has been unjustly enriched by $1.6 million (Second Counterclaim); that Plaintiff is entitled to a judgment declaring the parties' payment obligations with respect to both the Diomed and VNUS actions (Third Counterclaim); and that Plaintiff has suffered "loss" for which Defendant is obligated under Sections 1.13 and 9.2 of the SDA (Fourth Counterclaim).[2]

## III. DISCUSSION

Defendant makes three arguments in support of its motion to dismiss. Defendant's first argument targets the merits of Plaintiff's claims, while its second and third arguments raise procedural concerns regarding the interplay between this case and the New York action. Defendant also contends that Plaintiff should be sanctioned for filing this "frivolous" lawsuit.

---

**2.** In full, Section 1.13 of the SDA defines "Loss" as follows:

> **1.13** **"Loss"** shall mean any and all damages, fines, fees, penalties, deficiencies, liabilities, losses and expenses, including without limitation, interest, reasonable expenses of investigation, court costs, reasonable fees and expenses of attorneys, accountants and other experts or other expenses of litigation or other proceedings or of any claim, de-

fault or assessment (such fees and expenses to include without limitation, all fees and expenses, including, without limitation fees and expenses of attorneys, incurred in connection with (i) the investigation or defense of any third party claims or (ii) successfully asserting or disputing any rights under this Agreement against any party hereto or otherwise).

(Document No. 7, Exhibit.)

### A. Defendant's Merits Argument

Defendant first argues that Plaintiff has failed to state claims upon which relief may be granted. In the main, Defendant asserts with respect to Count II that Plaintiff has failed to identify, or even allege, the existence of any contractual provision breached by Defendant. Defendant also argues that the court should dismiss: Count IV, the chapter 93A claim, because Plaintiff cannot merely repackage its breach of contract claim as a claim under that statute; Count III, the quantum meruit/unjust enrichment claim, because Plaintiff has failed to allege that either it or Defendant reasonably expected Plaintiff's defense costs to be reimbursed; and Count I, the declaratory judgment claim, because Plaintiff's request for declaratory relief is a "mere rehash of its other futile claims." Not surprisingly, Plaintiff opposes these arguments, arguing that the liberal notice pleading standards of Fed.R.Civ.P. 8(a)(2) have been met.

This court believes that, at present, the instant complaint ought not be dismissed on its merits. For one thing, the court deems it unwise to delve into the substance of Plaintiff's claims if, as will be suggested below, they are more appropriately litigated in New York. Second, the court finds that Plaintiff has sufficiently met the requirements of Rule 8(a)(2) by adequately pleading the essential elements of its declaratory judgment claim (see Complaint ¶¶ 18–20), its breach of contract cause of action (see id. ¶¶ 21–23), its quantum meruit/unjust enrichment claim (see id. ¶¶ 24–26), and its chapter 93A cause of action (see id. ¶¶ 27–30). See Calvi v. Knox County, 470 F.3d 422, 430 (1st Cir.

2006) (noting that the complaint simply "must . . . give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," i.e., it "must at least set forth minimal facts as to who did what to whom, when, where, and why") (citations and internal quotation marks omitted). To be sure, the court does not wish to tie the hands of a New York judge who may also be confronted with a dispositive motion. For present purposes, however, the court simply believes the case ought to survive its transfer to New York.[3]

### B. Defendant's Procedural Arguments

Defendant makes two procedural arguments which the court will discuss in turn. First, Defendant argues that Plaintiff's complaint should be *dismissed* because of a prior pending action between the same parties regarding the same claims and issues. Second, Defendant asserts that the complaint should be *transferred* to the Northern District of New York for consolidation with the New York action because that action was filed first. In the court's view, the second argument has more force and it is upon that argument which the court will recommend that Defendant's motion be allowed.

#### 1. Prior Pending Action Doctrine

Citing a footnote at the end of a lengthy report and recommendation by Magistrate Judge Judith Dein (subsequently adopted by District Judge Patti Saris), *Carmack v. Massachusetts Bay Transp. Auth.*, 465 F.Supp.2d 18, 33 n. 10 (D.Mass.2006), Defendant asserts that something called the "prior pending action doctrine" calls for dismissal. As described by Magistrate

---

**3.** The court also notes that Defendant has not raised any argument that certain pleading nuances articulated in the Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), affect this case. Accord-

ingly, the court has not considered that issue. *Compare Damon v. Moore*, 520 F.3d 98, 103 (1st Cir.2008) (noting that the disposition of the plaintiff's complaint "does not depend upon the nuances of *Twombly*'s effect on the dismissal standard").

Judge Dein, the court has an "inherent power to dismiss or stay an action in favor of prior litigation presenting the same claims and issues." *Id.* (citing cases). The doctrine applies here, Defendant argues, because there is a prior pending action between the same parties regarding the same claims and issues.

In opposition, Plaintiff originally asserted that dismissal under the prior pending action doctrine would be inappropriate because "[t]he vital issues in the present action, the payment of defense costs and the reasonable expectation of repayment, are not pending in the New York Action, as the New York Action is solely 'on the contract.' " (Pl.'s Brief at 17.) That assertion, however, is no longer accurate given the counterclaims Plaintiff has since filed in the New York action, *i.e.,* that Defendant is obligated under the SDA to indemnify Plaintiff for the $1.6 million it expended in defense of the Diomed litigation (First Counterclaim), that Defendant has been unjustly enriched by $1.6 million (Second Counterclaim), that Plaintiff is entitled to a judgment declaring the parties' payment obligations with respect to both the Diomed and VNUS actions (Third Counterclaim), and that Plaintiff has suffered "loss" for which Defendant is obligated under Sections 1.13 and 9.2 of the SDA (Fourth Counterclaim). Aspects of these four counterclaims are quite similar, if not identical, to Plaintiff's claims here. (The only differences appear to be that Plaintiff's chapter 93A claim is not included in its counterclaims in the New York action and that the VNUS matter is mentioned in the New York action but not

here.) Of course, the parties are identical in both lawsuits.

That being said, the court will not recommend dismissal based on the *Carmack* footnote inasmuch as the court's own research has not unearthed any decision within the First Circuit, not even *Carmack* itself, which actually dismissed a case based upon a "prior pending action doctrine." *But see Continental Time Corp. v. Swiss Credit Bank,* 543 F.Supp. 408, 410 (S.D.N.Y.1982) (applying version of the doctrine in New York federal court); *Conant v. Sherwin L. Kantrovitz, P.C.,* 29 Mass.App.Ct. 998, 563 N.E.2d 247, 249 (1990) (similar in Massachusetts state court). More to the point, the court believes that the "first-filed rule"—discussed next—clearly calls for a transfer of this case to the Northern District of New York.[4]

### 2. *First–Filed Rule*

■ There is ample support within this circuit for transferring cases pursuant to the "first-filed rule," Defendant's second procedural argument. According to District Judge F. Dennis Saylor:

> [T]he "first-filed" rule ... generally gives precedence to the first of two duplicative actions proceeding in different federal courts. "Where identical actions are proceeding concurrently in two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in a choice-of-venue decision." *Cianbro Corp. v. Curran–Lavoie, Inc.,* 814 F.2d 7, 11 (1st Cir.1987); *see Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508,

---

**4.** The court also notes that, within the context of Defendant's prior pending action doctrine argument, the parties spend considerable energy arguing about whether Plaintiff's claims here should be considered compulsory counterclaims (Defendant's argument) or permissive counterclaims in the New York action

(Plaintiff's argument). *Compare* Fed.R.Civ.P. 13(a) (describing requirements for compulsory counterclaims) and 13(b) (describing requirements for permissive counterclaims). That argument now appears moot given that Plaintiff has since filed its counterclaims in the New York action.

67 S.Ct. 839, 91 L.Ed. 1055 (1947) (the "plaintiff's choice of forum should rarely be disturbed").

*Transcanada Power Mktg., Ltd. v. Narragansett Elec. Co.*, 402 F.Supp.2d 343, 347 (D.Mass.2005) (transferring case to forum where dispute was filed first). In other words, there is a "strong presumption" favoring the forum chosen first, against which the opposing party "must bear the burden of proving . . . that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 719 (1st Cir.1996). *Accord Veryfine Prods., Inc. v. Phlo Corp.*, 124 F.Supp.2d 16, 21 (D.Mass.2000). Indeed, as Judge Saylor recognized, it is particularly appropriate to transfer a second case to the forum of the first case where, as here, "two sophisticated parties are negotiating at arm's length." *Transcanada Power*, 402 F.Supp.2d at 350 (citations omitted).

■ To be sure, there are two generally-recognized exceptions to the first-filed rule: "The first is where there are 'special circumstances' justifying [the cases being heard in the second forum], such as where the party bringing the first-filed action engaged in misleading conduct in order to prevail in a pre-emptive 'race to the courthouse.' The second is where the balance of convenience substantially favors the second-filed action." *Id.* (citing cases). Here, however, Plaintiff does not contend that either of the exceptions applies. That is, Plaintiff neither argues that Defendant engaged in misleading conduct in order to prevail in a pre-emptive "race to the courthouse" nor that the balance of convenience substantially favors this lawsuit over the New York action. At most, Plaintiff, citing Judge Saylor's opinion quoted above, argues that the vital issues to be determined are not "identical."

■ In the court's view, however, Plaintiff cannot distance itself from the first-filed rule, particularly given that its claims have now been filed as counterclaims in the New York action. True, the claims in the two cases are not mirror images of one another; for example, as indicated, the instant complaint, unlike the New York counterclaims, omits any reference to the VNUS suit and includes a chapter 93A cause of action. But the essence of Plaintiff's position in the two suits—particularly Plaintiff's emphasis on recovering its $1.6 million defense costs in the Diomed case as well as its request for a declaratory judgment—is identical. Accordingly, there are sufficient grounds for allowing Defendant's motion pursuant to the first-filed rule and transferring the case to the Northern District of New York.

Before moving on, the court adds one point. Plaintiff implies (but never really argues) that the present action was actually filed first since it was served on Defendant on January 14, 2008, *i.e.*, one day prior to Defendant serving Plaintiff with the summons and complaint in the New York action, January 15, 2008, and nearly two weeks prior to the complaint in the New York action being delivered to Plaintiff's corporate office, January 27, 2008. In the court's view, this argument, if argument it is, is a red herring. Under the federal rules, the measuring date for present purposes is the date the complaint was filed in court, not the date of service. *See* Fed.R.Civ.P. 3 ("A civil action is commenced by filing a complaint with the court."). *Cf.* Fed.R.Civ.P. 4(m) (noting that a complaint will be dismissed if the defendant is not served within 120 days "after the complaint is filed"). Here, the New York action was filed on January 2, 2008, whereas the instant complaint was filed on January 11, 2008. Accordingly, there can be no question but that the New York action was filed first.

## C. *Defendant's Sanctions Argument*

Defendant asserts, pursuant to Rule 1.3 of the Local Rules of the United States District Court for the District of Massachusetts, that Plaintiff should be sanctioned and that Defendant should recover the costs and attorney's fees it has incurred in defending itself against Plaintiff's "frivolous" complaint. According to Defendant, Plaintiff "[s]uspiciously . . . commenced this slapdash action only nine days after [Defendant] sued it in the Northern District action." (Def.'s Brief at 15.) Plaintiff's decision to do so, instead of initially filing counterclaims in the New York action, Defendant continues, "can only be interpreted as an attempt to harass and delay [Defendant] by forcing it to litigate the same issues in two different courts." (*Id.*) Defendant continues to seek sanctions in both its Reply Brief and the supplemental letter it filed on April 1, 2008. (See, *e.g.*, Def.'s Reply Brief at 7) (calling Plaintiff's complaint "frivolous and padded with invalid repetitive claims" and its "ex post facto" arguments "spurious" and "frivolous"; April 1, 2008 Letter (describing Plaintiff as "frivolous" and "spurious").)

In the court's view, Defendant's call for sanctions—not to mention the aspersions it casts—is unwarranted. Plaintiff's litigation strategy makes sense; it sued Defendant here only after unsuccessfully demanding recovery through a series of letters. It also appears that Plaintiff was not aware of the New York action when it filed this lawsuit. Moreover, it is the court's opinion, as noted above, that Plaintiff's claims (most of which now exist as counterclaims in the New York action) ought not presently be dismissed on their merits.

In turn, the court would not go as far as Plaintiff does in its opposition, in which it too requests sanctions, that the bases for Defendant's motion "are clearly violations of Fed. R. Civ. Pro. 11 and Local Rule 1.3." In short, neither party, in the court's view, should be sanctioned and Defendant's particular request for sanctions should be denied.

## IV. CONCLUSION

For the reasons stated, the court recommends that Defendant's motion to dismiss be ALLOWED insofar as it requests that the case be transferred to the Northern District of New York, but otherwise DENIED.[5]

Sept. 11, 2008.

---

[5]. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.